(No. 31950.—

KATHINKA WIIK, Appellee, *vs.* CLARA HAGEN, Exrx., Appellant.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

PHILIP J. SLOTNIKOFF, of Chicago, for appellant.

JAMES D. PETERSON, and HANS TORGERSON, both of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Gustav Hansen, a resident of River Grove, Cook County, died testate November 27, 1947. He left surviving as his sole heir-at-law a sister, Kathinka Wiik, a citizen and resident of Norway. By his will dated October 10, 1947, he devised and bequeathed all his property to Clara Hagen,

a friend, and also nominated her as the executrix of his will, without bond. In August, 1948, the plaintiff, Kathinka Wiik, brought an action in the circuit court of Cook County against the defendant, Clara Hagen, as executrix and individually, to contest the will upon the grounds of lack of testamentary capacity and undue influence exerted by defendant. A trial before a jury resulted in a verdict that the instrument produced was not the will of Gustav Hansen and the court entered a decree declaring the purported will and probate of the will null and void. Defendant prosecuted an appeal to the Appellate Court. A freehold being involved, upon motion of plaintiff, the cause was transferred to this court.

Seeking a reversal, defendant contends that the trial court erred in denying her motion for judgment notwithstanding the verdict and her alternative motion for a new trial. As grounds for a new trial, defendant asserts (1) that the verdict is contrary to the manifest weight of the evidence, (2) that the opinions of certain of her witnesses as to the mental capacity of the testator were wrongfully excluded, and (3) that the trial court also erred in admitting in evidence a cancelled cashier's check, dated January 15, 1945, payable to Hansen in the sum of $6000.

As a preliminary matter it should be observed that the record is barren of any evidence showing lack of testamentary capacity. It follows, therefore, that defendant's motion for judgment notwithstanding the verdict and her contention that the verdict is contrary to the manifest weight of the evidence are to be tested solely by the evidence on the question of undue influence. The absence of testimony as to lack of testamentary capacity also serves to eliminate the issue raised by the exclusion of the opinions of some of defendant's witnesses as to the soundness of the testator's mind. Although the court unduly restricted the examination of two or three witnesses, much testimony was admitted showing that the testator possessed a sound

mind and memory. This evidence being uncontroverted, the exclusion of additional testimony to the same effect was not prejudicial to defendant.

Taking the remaining contentions of defendant in logical sequence, the first question to be considered is the correctness of the action of the trial court in denying defendant's motion for judgment notwithstanding the verdict. A will contest is not an ordinary action in chancery, but is strictly a statutory proceeding, the case being tried upon the issue whether the instrument produced is the will of the testator. (*Innis* v. *Mueller,* 403 Ill. 11; *Havill* v. *Havill,* 332 Ill. 11.) In cases of this character the verdict of a jury has the same force and effect as the verdict of a jury in an action at law, and motions for a directed verdict or judgment notwithstanding the verdict are subject to the same rules governing these motions in an action at law. (*Tidholm* v. *Tidholm,* 391 Ill. 19; *Hunt* v. *Vermilion County Children's Home,* 381 Ill. 29.) Where the evidence, together with all reasonable inferences to be derived therefrom, taken in the aspect most favorable to the plaintiff, is sufficient to establish the allegations of the complaint, the defendant is not entitled to a judgment notwithstanding the verdict. *Berg* v. *New York Central Railroad Co.* 391 Ill. 52; *Walaite* v. *Chicago, Rock Island and Pacific Railway Co.* 376 Ill. 59.

The evidence most favorable to plaintiff in support of her allegation that the will was procured by the exercise of undue influence arising out of a fiduciary relation, consisting primarily of the testimony of defendant called as an adverse witness, is as follows: At the time he executed the challenged will, Gustav Hansen was seventy-nine years of age and had been sick for three months with a serious heart condition which resulted in his death about seven weeks later. Hansen, a retired mechanic, left an estate consisting of his residence, other improved real estate subject to a contract for deed upon which there was a balance

due of $3447 payable in monthly installments, and a note for $10,000 secured by a mortgage. Defendant, who was then forty-seven years of age, lived near Hansen and had known him for fourteen years. She had been engaged in the real-estate business since 1939 and had fourteen years' previous business experience. During most of this period she resided with her two daughters by her first marriage and with her second husband, from whom she obtained a divorce in the spring of 1947.

Defendant attended Hansen's wife for two years before she died in December, 1940. Thereafter Hansen lived by himself but took his evening meal daily with defendant and her family. For this and other services, including looking after his clothing and keeping his house clean, Hansen paid defendant a modest monthly remuneration. Defendant, who, like Hansen, spoke both English and Norwegian, also befriended him, drove him wherever he wanted to go, and frequently took him with her on local business trips and on visits to friends in the country. In December, 1944, Hansen made defendant his deputy with authority to enter his safe-deposit box. At the same time, she began to collect the payments due him on the contract for deed and the note for $10,000 and to pay most of his bills for him. Subsequently, she also assisted him with his income tax returns and prepared the renewal of a note and mortgage for him. When Hansen died defendant had the contract for deed in her possession.

Hansen's health began to fail in July, 1947, and, following a heart attack on August 28, he was hospitalized for a period of two weeks. Early in October, defendant telephoned her lawyer, at Hansen's request, remaining in his presence while he instructed the lawyer to prepare a will. Although Hansen was with defendant when she drove to her lawyer's office to obtain the will, he remained in the car and did not see the lawyer.

On October 10, 1947, defendant drove Hansen to the office of Dr. Joseph Reiter, where he had an appointment. Dr. Reiter appeared as a witness for defendant. He testified that defendant produced the will in his office, that he declined to act as a witness, and that he did not see Hansen sign the will. The doctor's office nurse and a dentist from an adjoining office, who witnessed the will, disagreed as to whether Hansen merely acknowledged the instrument as being his will or actually signed it in their presence. In any event, thereafter defendant had possession of the will until it was filed in the probate court.

A few days after the will was executed, defendant drove Hansen to northern Wisconsin for a proposed two-week visit with mutual friends. Hansen having become very sick almost as soon as they arrived, they returned to River Grove on October 18, and Hansen entered the hospital the same day. Two weeks later defendant moved into his house, while he remained in the hospital until he died on November 27.

A fiduciary relation exists in all cases where trust and confidence are reposed on one side and there is a resulting superiority and influence on the other. (*Krieg* v. *Felgner*, 400 Ill. 113; *Brod* v. *Brod*, 390 Ill. 312.) The relationship may exist as a matter of law, as between guardian and ward, principal and agent or the like, or it may be moral, social, domestic or even personal in its origin. (*Stone* v. *Stone*, 407 Ill. 66; *Kester* v. *Crilly*, 405 Ill. 425.) Where a fiduciary relation exists between the testator and a devisee or legatee receiving a substantial benefit under the will and the will is written or its preparation procured by that beneficiary, proof of these facts establishes *prima facie* the charge that the will resulted from undue influence exercised by the beneficiary. (*Tidholm* v. *Tidholm*, 391 Ill. 19; *Donnan* v. *Donnan*, 256 Ill. 244.) The evidence most favorable to plaintiff shows that Hansen reposed consider-

able trust and confidence in defendant and tends to prove the existence of a fiduciary relationship. Likewise, the evidence recounted also tends to show that defendant procured the preparation of the will. The proof was thus sufficient to establish a *prima facie* case of undue influence and the trial court correctly denied defendant's motion for judgment notwithstanding the verdict.

It is also urged that the verdict is contrary to the manifest weight of the evidence. In this connection, defendant produced testimony to show that she did not stand in a fiduciary relation to Hansen; that she was the only one who had befriended him in his declining years and was one of the natural objects of his bounty; that he had not seen plaintiff since 1922, and that he executed his will as a free and voluntary act. We have carefully considered this testimony but, since the cause must be tried again, refrain from any discussion of the evidence.

The determinative issue in this case involves the admission in evidence for plaintiff, over the objection of defendant, of a cancelled cashier's check purchased by Mildred I. Banfield, dated January 15, 1945, payable to Gustav Hansen in the sum of $6000, reciting that it constituted payment in full of a mortgage, and indorsed in blank by Hansen. Plaintiff did not call Mildred Banfield as a witness and the mortgage referred to in the check was not identified or otherwise explained. There was no showing where the check was cashed or that Hansen ever received or possessed the proceeds. Plaintiff was wholly unable to trace the proceeds of the check to defendant. Upon interrogation, defendant denied all knowledge of the check, the mortgage it purported to extinguish, and Mildred Banfield. In short, plaintiff was permitted to introduce the check in evidence solely upon the testimony of the bank cashier who drew the instrument.

The check was too remote to show that Hansen did not know the extent of his property in October, 1947, and plain-

tiff failed to connect it up with the issue of undue influence. This did not stop counsel for plaintiff, however, from insinuating, during his examination of defendant and also in his argument to the jury, that she had appropriated the proceeds of the check for $6000. The check was not shown to relate to any of the issues made by the pleadings and its admission in evidence, being plainly prejudicial to defendant, constitutes prejudicial error.

The decree of the circuit court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*