*In re* ESTATE OF CARRIE VERONICO, a/k/a Carmella Veronico, Deceased.—(SUSAN DI MASO, by Peter G. Porikos, Guardian ad Litem, Plaintiff-Appellant, *v.* RICHARD DI MASO, Ex'r of the Will of Carrie Veronico, a/k/a Carmella Veronico, Defendant-Appellee.)

First District (3rd Division)    No. 78-593

Opinion filed October 10, 1979.—Rehearing denied December 5, 1979.

Richard Huszagh and Peter G. Porikos, of Jones and Huszagh, of Chicago, for appellant.

Gabriel A. Kostecki and Andrew A. Ziemba, both of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

This lawsuit involves a petition filed in the Circuit Court of Cook County by Susan Di Maso* to set aside the purported will of her sister, Carmella Veronico, and to declare it null and void. The plaintiff alleged that the testator lacked the mental or physical capacity necessary to execute a will and that the testator was under the influence, domination and control of Richard Di Maso, a nephew of the testator.

Prior to the commencement of the jury trial in this matter, the trial court determined that the plaintiff was not competent to testify at the trial and appointed Peter G. Porikos as guardian ad litem for Susan Di Maso. At the conclusion of the plaintiff's evidence, the trial court entered a directed verdict on the issue of undue influence. The jury determined that the document in question was the valid will of the testator, and on September 15, 1977, the trial court entered a judgment order declaring that the document was Carmella Veronico's last will. The plaintiff appeals from this order and the order of November 23, 1977, which denied her post-trial motion for judgment notwithstanding the verdict or, in the alternative, her motion for a new trial.

The plaintiff raises three issues on appeal: (1) whether the trial court erred in excluding the opinion testimony of one of the plaintiff's witnesses; (2) whether the trial court erred by refusing to admit into evidence certain bank records of the testator and (3) whether the trial court erred in sustaining the defendant's motion for a directed verdict on the issue of undue influence.

Carmella Veronico died on December 23, 1973, owning property valued at approximately $85,000. She signed her purported will with an "x" on August 8, 1973. In this will Carmella specifically bequeathed $500 to the Reverend Luke Dittman for masses for the repose of her soul, $1,000 to her sister, Susan Di Maso, $1,000 to her nephew, Philip J. Di Maso, and $10,000 to her nephew, Richard J. Di Maso. Carmella also devised her home located at 5758 North Mobile Avenue in Chicago to Richard, and she appointed him as executor of her will. She bequeathed the remainder of her estate to her sister, Caroline Smoczynski.

On April 23, 1973, Carmella suffered a stroke and was hospitalized until June 4, 1973. After her discharge from the hospital, Carmella lived with her nephew Richard and his family at 5758 North Mobile. Although Carmella owned the property on Mobile, Richard had lived in the home for more than 20 years.

In June of 1973 a family gathering occurred at the home on Mobile. The gathering was attended by various relatives of Carmella and also by

---

* Susan Di Maso died on January 27, 1979, prior to oral arguments in this matter. On February 8, 1979, this court appointed Peter G. Porikos administrator of the estate of Susan Di Maso for the purpose of continuing the prosecution of this appeal.

the attorney who drafted Carmella's will. There was evidence that at this gathering Richard, his brother Philip and counsel engaged in a private discussion concerning the disposition of Carmella's property.

On August 8, 1973, Carmella executed her will in the presence of the attorney and two witnesses, Sidney Oko and Joseph Sansiree. On November 3, 1973, Carmella fell at her home and re-entered the hospital where she remained until her death on December 23, 1973.

Conflicting testimony was presented concerning Carmella's mental capacity subsequent to her stroke in April of 1973. Rochelle Di Maso, Philip's daughter, testified that she visited her great-aunt regularly in the hospital and after her release. Rochelle stated that in June and in September of 1973 Carmella did not recognize her, was unable to move by herself and was unable to speak. In her opinion Carmella was not competent to transact ordinary business, to know the nature and extent of her property or to know the natural effects of her bounty.

Philip Di Maso, Richard's brother, testified that he visited his aunt daily during her hospitalization in April of 1973 and weekly after her release. He stated that during her hospitalization Carmella did not recognize him and was unable to communicate whatsoever. In September of 1973 Carmella could neither walk nor talk. In his opinion Carmella did not have the capacity to know either the nature and extent of her property or the natural effects of her bounty.

Gerald Lambert, the speech pathologist who tested and evaluated Carmella during both hospitalizations, was questioned by the plaintiff's attorney in detail concerning his educational background, his work experience and certification. The defendant's attorney then presented a motion to exclude any testimony by Lambert because he was not qualified as an expert witness on the issue of competency. The trial court sustained the objection. The plaintiff's attorney insisted that Lambert would testify as a lay person concerning his opinion of Carmella's mental capacity. He added that the purpose of his questioning concerning Lambert's credentials was not to qualify Lambert as an expert but to lay a proper foundation concerning Lambert's opportunity to observe Carmella and form an opinion.

In explaining the reasons for excluding Lambert's testimony, the trial court stated, in pertinent part, as follows:

"Gentlemen, as I said before, the reason I sustained the motion to the objection of the testimony of Lambert is because you preliminarily brought him and laid the foundation for him to testify as an expert.

* * *

Now, what you are telling me is that you mean to bring him in as a lay person from personal observations. Can you now switch your

position in view of the fact that you have impressed with the jury that this man has expertise, and now you are going—now you say you want him as a lay person?

The question is now, can I retract what has gone before the jury regarding his qualifications?"

Dr. Frank DeTrana, Carmella's physician, testified that he visited Carmella daily during her hospitalizations and saw her at least once a month during the interval. He stated that although Carmella had difficulty speaking and expressing herself as a result of the stroke, he was convinced that her mentality was normal. Dr. DeTrana testified that he had observed Carmella walking with assistance, and that on July 20, 1973, she visited his office which is located on the second floor of a building which has no elevator.

Sidney Oko, a witness to the will, testified that he had known Richard and his family for 22 years and that he owned a cottage in Wisconsin with Richard. He stated that on the day of the execution of the will, the attorney read and explained each paragraph of the will individually to Carmella. He said counsel paused after each paragraph, asked Carmella if she understood and Carmella responded "yes."

Two neighbors of Richard, Shirley Szydlowski and Irene Drozd, testified that in the summer of 1973 they observed Carmella walking outdoors with the assistance of Richard.

Phillip Di Maso, another nephew of Carmella, testified that he visited his aunt in June of 1973. He spoke to her in Italian and she would respond by signalling with her head.

Evidence also was introduced concerning Richard's alleged undue influence over Carmella. Elva Eslinger, Philip's mother-in-law, was present at the family gathering in June of 1973. She testified that Richard, Philip and the attorney participated in a conversation in the kitchen while Carmella was in another room in the house. She heard Richard announce that he would lose his wife if he didn't keep the house. In addition, she stated that Richard asked, "[W]hat do you want, Phil?" She further testified that Richard opened the kitchen door to ascertain who was there. The attorney said, "Don't let anybody in." After Richard replied, "Well, it's all right, she's okay," the attorney said to Elva, "Maybe you can talk some sense into Phil."

The plaintiff's attorney called Richard to testify as an adverse witness pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) Richard's testimony concerning the family gathering was unclear; however, he did admit that there was some discussion of a quit-claim deed and the preparation of a will. Richard did not recall the details of the conversation.

Richard also testified that he signed and cashed some of Carmella's

checks with which he paid the household bills. He stated that Sidney Oko was his personal friend, and that the attorney who drafted the will socialized at Oko's home. In November of 1973 Richard consulted the same attorney, who died in 1975, regarding a divorce.

Ruth B. Krause of Hoyne Safety Deposit Company testified concerning Carmella's safe deposit box. Her records revealed that the names of Caroline Smozynski and Richard Di Maso were added to the lease of the box in 1971. The court denied the plaintiff's motion to admit these records into evidence in order to establish a fiduciary relationship.

I

The first issue for review is whether the trial court erred in refusing to allow Gerald Lambert to testify on the issue of Carmella's mental capacity. The plaintiff contends that the trial court misconstrued counsel's questioning concerning Lambert's background. The plaintiff argues that this questioning was necessary in order to lay a foundation to demonstrate Lambert's ability to observe and evaluate Carmella and to form an opinion concerning her mental capacity.

The defendant contends that the trial court properly determined that the impression of expertise generated by the plaintiff's questioning had influenced the jury. In addition, the defendant argues that because Lambert's written reports and evaluations were admitted into evidence, the jury was fully advised concerning Lambert's opinions.

■■ ■ When a person executes a will he must possess sufficient mental capacity to know the natural objects of his bounty, to comprehend the character and extent of his property, to understand the particular business in which he is engaged, and to dispose of said property pursuant to a plan formed in his mind. (*Peters v. Catt* (1958), 15 Ill. 2d 255, 154 N.E.2d 280; *Butler v. O'Brien* (1956), 8 Ill. 2d 203, 133 N.E.2d 274.) It is permissible for a lay person to testify in a will contest concerning the issue of testamentary capacity provided he relates sufficient circumstances in which he observed the testator to demonstrate that the opinion is not a guess, suspicion or speculation. (*Peters v. Catt; Butler v. O'Brien.*) Although a person cannot testify concerning the ultimate issue of whether the testator possessed the requisite testamentary capacity to execute the will, the witness may give his general opinion concerning the various elements of testamentary capacity such as the testator's ability to know the natural objects of his bounty, to know the character and extent of his property, or the ability to transact any business. *Trojcak v. Hafliger* (1972), 7 Ill. App. 3d 495, 288 N.E.2d 82.

■■ Gerald Lambert observed, tested and evaluated Carmella during both of her hospitalizations. His opinion concerning her mental capacity

certainly was relevant, and the trial court erred by refusing to admit his testimony.

Although we agree with the trial court that counsel's questioning concerning Lambert's credentials suggested that counsel was attempting to qualify Lambert as an expert witness, we believe that a proper instruction by the court would have eliminated any impression on the jury that Lambert was an expert on the issue of mental capacity.

This conclusion is supported by the fact that Dr. Frank DeTrana, a licensed physician, testified on behalf of the defendant on the issue of mental capacity. We doubt that the credentials of a speech pathologist would have impressed the jury more than the obvious credentials of a medical doctor. In addition, the trial court instructed the jury as follows:

> "During the course of this trial a physician and layman have testified concerning the mental capacity of Carmella Veronico. The testimony of the physician is not entitled to any greater weight solely because he is a physician."

The court could have presented a similar instruction pertaining to the testimony of the speech pathologist.

We disagree with the defendant's contention that the jury was informed of Lambert's opinion by way of the admission into evidence of his written reports and records. Although an examination of these documents may reveal Lambert's opinion on the nature and extent of Carmella's loss of language skills as the result of her stroke, they do not contain his opinion on her ability to transact ordinary business, to know the nature and extent of her property, and to know the natural effects of her bounty.

In *Both v. Nelson* (1964), 31 Ill. 2d 511, 202 N.E.2d 494, the trial court erroneously refused to permit a witness to testify concerning the mental capacity of the testator. The supreme court reversed the jury's verdict holding that,

> "[W]here the case is a close one on the facts, and the jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for reversal." *Nelson*, 31 Ill. 2d 511, 514, 202 N.E.2d 494.

We believe that the exclusion of Lambert's testimony resulted in substantial prejudice to the plaintiff and may have affected the jury's verdict. For this reason, the judgment of the Circuit Court of Cook County is hereby reversed and this matter is remanded for a new trial on the issue of the mental capacity of Carmella Veronico.

## II

The second issue raised by the plaintiff is that the trial court committed prejudicial error by refusing to admit into evidence the

records of Hoyne Safety Deposit Company which reveal that Carmella added Richard's name to the lease of her safe deposit box in 1971. The plaintiff asserts that these records tend to prove the existence of a fiduciary relationship between Carmella and Richard.

Ruth Krause, an employee of Hoyne, did testify that Richard's name was added to the lease in 1971. In addition, she informed the court that Richard entered the box in June 1973 and that he closed the box in August of 1974. When excluded evidence is fully established by other evidence and the evidence offered is merely cumulative, any error resulting from the exclusion is harmless error. *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533; *Braswell v. New York, Chicago & St. Louis R.R. Co.* (1965), 60 Ill. App. 2d 120, 208 N.E.2d 358.

### III

The third issue for review is whether the trial court erred in sustaining the defendant's motion for a directed verdict on the issue of undue influence. A directed verdict should be entered only in those cases in which all of the evidence, when viewed most favorably to the opponent, so overwhelmingly favors a movant that no contrary verdict based on that evidence could ever stand. *Breault v. Feigenholtz* (1973), 54 Ill. 2d 173, 296 N.E.2d 3; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Zerbenski v. Tagliarino* (1978), 67 Ill. App. 3d 166, 384 N.E.2d 753.

The undue influence which will void a will must be directly connected with the execution of the document and must operate at the time the will is made. (*Peters v. Catt*; *Sterling v. Dubin* (1955), 6 Ill. 2d 64, 126 N.E.2d 718.) The influence must be specifically directed toward procuring the will in favor of a particular party and must be such as to destroy the freedom of the testator's action, thereby rendering the document more the result of the will and intent of another than of the will and intent of the testator. (*Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 124 N.E.2d 895; *Lake v. Seiffert* (1951), 410 Ill. 444, 102 N.E.2d 294.) A court may not speculate concerning the possibilities of what may have transpired in the case, for the burden rests on the contestant to produce evidence of undue influence. *Lake v. Seiffert.*

In certain instances the law will raise a rebuttable presumption that the will was executed as a result of undue influence. This presumption arises where a fiduciary relationship exists between the testator and the devisee who receives a substantial benefit from the will, where the testator is the dependent and the devisee the dominant party, where the testator reposes trust and confidence in the devisee, and where the will is written or its preparation procured by the devisee. *Peters v. Catt* (1958),

15 Ill. 2d 255, 263; *Redmond v. Steele* (1955), 5 Ill. 2d 602, 126 N.E.2d 619; *Tidholm v. Tidholm* (1945), 391 Ill. 19, 62 N.E.2d 473.

The plaintiff argues that evidence was introduced to show a fiduciary relationship between Carmella and Richard, a person who benefits substantially from the will. In addition, she contends that the evidence reveals that Carmella was the dependent party who reposed trust and confidence in Richard, and that Richard was involved in the preparation of Carmella's will. Therefore, the plaintiff asserts that the trial court should have submitted to the jury the question of undue influence.

The plaintiff's amended petition, however, does not allege the existence of a fiduciary relationship. The petition merely presents a conclusion that Richard exerted undue influence. Paragraph 6 of the petition states:

> "6.) At the time of the alleged making of said will, Carmella Veronico, was under the influence, domination and control of Richard DiMaso, who used both physical and mental force and coercion upon Carmella Veronico in doing any act.
>
> That because of said coercion and undue influence by Richard Di Maso, whatever remaining will or mental capacity which said Carmella Veronico had, was overpowered and circumvented and the will of Richard Di Maso was substituted for her will."

● 7 In *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249, the complaint charged that the testator was under the undue influence, domination and control of the defendant, whereby the defendant's will was substituted for the will of the testator. The supreme court in holding that the trial court had erred in presenting an instruction on the presumption of undue influence, stated:

> "The complaint, however, charges only actual fraud and coercion on the part of Sara Grate. Therefore, the only instructions relating to undue influence which could properly be given in this case must be based on actual fraud or coercion. This court has frequently pointed out the distinction between undue influence arising from coercion or active fraud and undue influence resulting from the abuse of a fiduciary relationship existing between the parties. [Citation.] Where a party bases his case upon the existence of a fiduciary relationship, he should plead such relationship in the trial court and his failure to do so precludes making such claim on appeal. [Citation.]" (*Belfield*, 8 Ill. 2d 293, 309.)

Because the plaintiff in the present case did not allege the existence of a fiduciary relationship in her pleadings, we are concerned only with whether the plaintiff produced any evidence to show undue influence arising from physical and mental force or coercion.

■■ The plaintiff has not introduced any evidence to prove any specific conduct of Richard which would constitute undue influence. Although a court may require less evidence to establish undue influence when the testator's mind has been weakened by long-continued and serious illness (*Butler v. O'Brien*; *Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 115 N.E.2d 226), the plaintiff must introduce some evidence to support her allegations of undue influence. As we previously noted, the undue influence must exist and operate at the time of the execution of the will. The only evidence introduced concerning the execution of Carmella's will was the testimony of Sidney Oko. He stated that he observed Carmella execute the document with an "x" and that Carmella indicated that she understood the contents of the will.

The plaintiff introduced evidence that Carmella had suffered a stroke and had difficulty communicating with others. Two witnesses described her as bedridden and of unsound mind. In addition, the testimony revealed that Richard had discussed the disposition of Carmella's property with the attorney who drafted the will. However, no evidence was introduced to show that Richard exerted any influence over Carmella which destroyed her free will and resulted in the execution of her will.

Although one might wonder how Carmella communicated her testamentary intentions to her attorney, we cannot speculate concerning the possibilities of what may have transpired. (*Lake v. Seiffert*.) Because the plaintiff introduced no evidence to support her allegations of undue influence, we affirm the order of the Circuit Court of Cook County which directed a verdict on the issue of undue influence.

For the reasons stated, the judgment of the Circuit Court of Cook County excluding the testimony of Lambert is hereby reversed and remanded for a new trial on the issue of mental capacity of Carmella Veronico. The judgment order which directed a verdict on the issue of undue influence is affirmed.

Affirmed in part; reversed in part and remanded.

SIMON, P. J., and McNAMARA, J., concur.