VIRGIL SCHMIDT, Adm'r of the Estate of Faye Schmidt, Deceased, Plaintiff-Appellee, *v.* TOMMIE EARL SCHWEAR, Indiv. and as Ex'r of the Estate of Iva Corbett, Deceased, *et al.*, Defendants-Appellants.

Fifth District    No. 79-525

Opinion filed July 27, 1981.

Morris B. Chapman, of Chapman and Carlson, of Granite City, for appellants.

J. William Lucco, of Mudge, Riley & Lucco, of Edwardsville, for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiffs filed suit to set aside the last will and testament of Iva Corbett, executed July 21, 1977, in which she left the majority of her estate to her sister, Tommie Earl Schwear, one of the defendants. Following trial, a jury found that the July 21, 1977 instrument was not the voluntary last will and testament of the decedent. In response to a special interrogatory, the jury found that defendant and her husband, William, exercised undue influence upon the testatrix. Defendant appeals from the jury verdict, contending that: (1) the verdict was against the manifest weight of the evidence, (2) the trial court erred in denying defendant's motions for directed verdict and for judgment notwithstanding the verdict, and (3) the jury was improperly instructed.

The evidence introduced at trial indicated that Iva Corbett was 70 years of age at the time of the execution of the contested will and at the time of her death. She had been married to Bill Corbett, who died in 1966. The couple had no children; for almost 40 years they lived on a tract of real estate devised in the will. After her husband's death, Iva continued to reside there alone. The evidence further indicated that Iva Corbett was the oldest of five children. She was survived by a brother, Arley Keith; a sister, Faye Schmidt; and her youngest sister, Tommie Earl Schwear, who was 12 years her junior. Another sister, Leeda Keith, predeceased Iva in early 1977.

The action contesting the will was initially brought by Faye Schmidt, who died after the suit was instituted. Following Faye's death, the case was maintained by her husband, Virgil, as executor of her estate. Marion Tow, who was 38 years old at the time of trial, was the principal beneficiary under a prior will executed by Iva Corbett which was revoked by the challenged will.

Defendants in this action are Tommie Earl Schwear (hereinafter referred to as defendant) and Arley Keith, sister and brother of the testatrix. Arley Keith, who was to receive $5,000 under the terms of the challenged will, did not take an active part in the case.

Three wills, two of which were executed by Iva Corbett, were placed in evidence at trial. The evidence discloses that the first will was executed on January 29, 1976, and was prepared by Wendell Durr, an Edwardsville attorney. Mr. Durr testified that such will was prepared pursuant to the directions of Iva Corbett alone. The will directed that the

personal property of Iva Corbett be divided equally between Faye Schmidt and Tommie Earl Schwear and that the real estate become the property of Marion Tow. A lease was also prepared by attorney Durr at the request of Iva Corbett and was executed the same day. This instrument leased all of the real property of Iva Corbett, except the residence, to Marion Tow for a period of 30 years, provided that he pay taxes on the property. Neither the will nor the lease prepared by Mr. Durr had been revoked at the time of the execution of the contested will.

Iva Corbett returned to the office of Wendell Durr on July 6, 1977, accompanied by defendant Tommie Earl Schwear and her husband. The parties requested that reciprocal wills be prepared for them. The proposed will of Iva Corbett bequeathed all of Iva's personal property to Tommie Earl Schwear and devised a life estate in the real property to Tommie Earl Schwear, with the remainder to Marion Tow. Neither the will prepared for Iva Corbett nor the reciprocal will of the Schwears was ever executed.

The contested will of Iva Corbett was prepared on July 20, 1977, by David Simpson, an Edwardsville attorney. Mr. Simpson did not meet or speak with Mrs. Corbett but prepared the will from the instructions given him by Tommie Earl and Bill Schwear, who personally visited his office. This will bequeathed $5,000 to Iva's brother, Arley Keith, and the remainder of Iva's real and personal property to Tommie Earl Schwear.

The will prepared by Mr. Simpson was executed on July 21, 1977, while Iva Corbett was a patient in the intensive care unit of Oliver C. Anderson Hospital. Dr. Tom Hill and Sandy Connors, R.N., were witnesses to the execution of the will. Following execution of the will, Iva remained in the hospital, where she died one week later, on July 28, 1977. This will subsequently was admitted to probate on September 12, 1977.

At trial, testimony presented on behalf of plaintiff established that for many years a close relationship had existed between Iva Corbett and Marion Tow, devisee of the real property under the January 29, 1976 will. Tow had moved to Illinois from Oklahoma while he was in his teens. During this period he helped Bill Corbett with chores on the Corbett property; and in 1964 when Tow returned after spending three years in the Army, he again helped Bill Corbett maintain the property.

The relationship between Iva Corbett and Marion Tow continued after the death of Bill Corbett. Tow testified that during the years 1975 through 1977, he removed old cars from the Corbett property. He also built a barn, rebuilt fences, and relandscaped part of the property. He also stated that he paid taxes on the property pursuant to the January 29, 1976, lease.

At the time of the trial, Marion Tow was married and had three children. Testimony indicated that the relationship between Iva Corbett

and Marion was like that of mother and son. Friends of Iva testified that she affectionately referred to Marion as "the kid" and never had anything but kind words for him. The Tows maintained the property, kept the weeds cut and fences mended, and brought Iva produce from their garden. Testimony of friends indicated that the warm relationship continued at least through the end of May 1977, two months before Iva's death.

The plaintiff called Tommie Earl and Bill Schwear to testify as adverse witnesses under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). Their testimony revealed that Tommie Earl had lived with her older sister, Iva, and Iva's husband, Bill, during a period of Tommie's childhood in the early 1940's. Following her marriage to Bill Schwear, Tommie moved from Illinois in 1959, and she and her husband did not return to the area permanently until 1972. During this absence the Schwears maintained communication with Faye Schmidt but lost all contact with Iva Corbett. In fact, they did not become aware of Bill Corbett's death in 1966 until after his funeral.

From the return of the Schwears to Illinois in 1972, until the death of Iva Corbett's sister, Leeda Keith, in April 1977, Iva and the Schwears did not have a close relationship. In fact, two friends of Iva testified that they observed Iva intentionally avoid and attempt to ignore Tommie early in 1977, the year of Iva's death. However, after the death of Leeda Keith early in 1977, Iva and Tommie became much closer. The Schwears often provided transportation for Iva and performed other services. Tommie testified that during this three-month period, Iva reposed a great deal of trust and confidence in both her and her husband.

On July 6, 1977, the Schwears took Iva to the office of Wendell Durr, her attorney, for the purpose of having reciprocal wills drafted. The Schwears each requested, in Iva's presence, that Mr. Durr draft their wills leaving all of their property first to the other and then to Iva Corbett. Both Tommie Earl and Bill Schwear testified that when Iva's will was discussed, they were present but did not participate in the discussion or influence Iva in any way.

The testimony of Wendell Durr concerning the July 6 meeting directly conflicted with that of the Schwears. Mr. Durr testified that the Schwears not only participated in the discussion about Iva's will but spoke negatively to Iva about Marion Tow and his family. Mr. Durr testified that Bill Schwear specifically tried to discourage Iva from leaving her farm to Marion Tow and that the Schwears reminded Iva of what Durr characterized as "piddly disputes." Durr testified that he believed the Schwears tried to influence Iva at this meeting. Durr concluded that when Iva insisted upon devising the real property to Marion Tow subject to a life estate to the Schwears, the Schwears felt that they had failed.

The plaintiff presented further testimony concerning the preparation of the challenged will, executed on July 21, 1977. The will was prepared on July 20, 1977, by David Simpson, an Edwardsville attorney, exclusively from the directions of Tommie Earl and Bill Schwear, who visited Simpson in his office. Testimony was unrebutted that Simpson never met nor talked with Iva Corbett, the testatrix. The will provided for a $5,000 bequest to Arley Keith and then bequeathed and devised the balance of Iva's property to Tommie Earl Schwear. This will was executed the following day while Iva was in the hospital.

Evidence introduced on behalf of defendants detailed a deteriorating relationship between Iva Corbett and Marion Tow, which defendants assert was the motivation behind execution of the challenged will. According to the testimony of Tommie Earl Schwear, Iva had a dispute with Marion Tow regarding a refund Iva had received from the property taxes which Tow had paid under the terms of the January 29, 1976, lease. Added to this disagreement was a dispute over payment for a chain which Iva had provided for a dog owned by the Tows. The dispute culminated on July 19, 1977, when Iva complained that she was locked out of a chicken house she maintained on the property. Tommie Schwear testified that Iva became so distressed at this occurrence that it resulted in chest pains for which she was hospitalized and the heart attack from which she never recovered.

The fact that a disagreement arose between Iva Corbett and Marion Tow was corroborated in some particulars by other witnesses. Lois Hampton, a friend of Iva Corbett who saw her on July 19, the day of her heart attack, testified that Iva "said something about a dog chain, but she just slouched [sic] it off." Dr. Thomas Hill, Iva's attending physician, testified that she said she "had trouble out on the farm." The testimony of the attending nurse was similar.

The bulk of the remainder of defendants' evidence concerned the preparation and execution of the challenged will. It indicated that on July 20, the morning after Iva Corbett was admitted into the hospital, Melba Schmidt, a sister-in-law of Faye Schmidt and a friend of Iva, telephoned the office of Wendell Durr, seeking to have a will drafted on Iva's behalf. She was told that Durr was out of town. Later on the same day, Tommie Earl and Bill Schwear went to the office of David Simpson. The following day, they obtained a will from his office and returned with it to the hospital.

The execution of the will on July 21 was witnessed by Dr. Thomas Hill and Nurse Sandy Connors. Neither witness was present when the will was read to Iva Corbett. Both witnesses testified that although Iva was receiving medication for her heart condition, she was mentally clear and alert at the time the will was executed.

After the conclusion of the evidence, the case was sent to the jury for deliberation along with the following Special Interrogatory proposed by defendants: "Did the Defendants, Tommie and William Schwear, exercise undue influence upon the Testatrix, Iva Corbett, so as to secure the will dated July 21, 1977 and its execution?" The jury's answer was yes, and a verdict was returned in favor of plaintiff. Defendant appealed after judgment was entered on the verdict.

Undue influence sufficient to invalidate a will is that influence which prevents the testator from exercising his own will in the disposition of his estate (*Peters v. Catt* (1958), 15 Ill. 2d 255, 154 N.E.2d 280) or which deprives the testator of free agency and renders the will more that of another than his own. (*Kelley v. First State Bank* (1980), 81 Ill. App. 3d 402, 401 N.E.2d 247.) The influence may be exerted at any time (*Peters v. Catt*) but must be directly connected with the execution of the will and operate at the time the will is made. (*Kelley v. First State Bank.*) The influence may be that of a third person, such as the spouse of a beneficiary, as well as that of direct beneficiaries. *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 234 N.E.2d 91.

■■ In certain instances, the law will raise a rebuttable presumption that the will was executed as a result of undue influence. Where a fiduciary relationship exists between the testator and the devisee who receives a substantial benefit from the will, and where the testator is the dependent and the devisee the dominant party and the testator reposes trust and confidence in the devisee, and where the will is written or its preparation procured by that devisee, proof of these facts establishes *prima facie* the charge that the execution of the will was the result of undue influence exercised by that beneficiary. (*Peters v. Catt; In re Estate of Veronico* (1979), 78 Ill. App. 3d 379, 396 N.E.2d 1095.) Further, old age and disability of the testator is a material circumstance which may be considered on the issue of undue influence. *Cf. Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 115 N.E.2d 226; *Sulzberger v. Sulzberger* (1939), 372 Ill. 240, 23 N.E.2d 46.

At the outset, defendants contend on appeal that: (1) the trial court erred in denying defendants' motions for a directed verdict and for judgment notwithstanding the verdict, and (2) the verdict was contrary to the manifest weight of the evidence. We find that neither of these contentions has merit.

■■ While this is a special statutory proceeding, defendants' motions for directed verdict and for a judgment notwithstanding the verdict are governed by the same standards which apply in actions at law. (*Peters v. Catt: Swenson v. Wintercorn.*) Either motion should be granted only where all the evidence, when viewed in its aspect most favorable to the contestants, so overwhelmingly favors the defendant that no contrary

verdict based on that evidence could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *In re Estate of Basich* (1979), 79 Ill. App. 3d 997, 398 N.E.2d 1182; *Swenson v. Wintercorn.*) On review, this court may not substitute its judgment on the evidence for that of the trier of the facts. Where several reasonable inferences are possible from conflicting testimony, a court of review is obligated to accept those which support the trial level finding. *Kelley v. First State Bank.*

■■ We conclude that plaintiff in the case at bar has introduced evidence sufficient to establish a *prima facie* case of undue influence, thus creating a rebuttable presumption that decedent's will was executed as a result of undue influence.

A similar case relied on by the parties below is *Swenson v. Wintercorn.* There, suit was filed to set aside the will of the testatrix, who was a widow with no children. The plaintiff and defendant were her nephew and niece, respectively. The evidence indicated that in February 1957, the testatrix executed a will, leaving one-half of her property to defendant and one-quarter each to the plaintiff and another niece. Two years later, after the testatrix began having difficulty handling her finances, her financial advisor told the defendant of her condition. In August 1959, defendant and her husband helped the testatrix move into their home. The defendant then opened a joint checking account with the testatrix and shared a safety deposit box with her. Subsequently, arrangements were made for an attorney to come to defendant's home. At the meeting, the attorney, the testatrix, and defendant's husband discussed the testatrix's estate plans. At trial, the attorney testified that he specifically remembered defendant's husband talking to the decedent about her will and estate and urging her that "she should get at it"; however, he could not remember whether such remark was made at this meeting or on some other occasion. The meeting resulted in the preparation and execution of a trust and will, providing that upon her death her estate would be distributed as follows: $2500 to a niece, $2500 to plaintiff, and the balance to the defendant.

After the death of the testatrix, an action was brought contesting the will and trust agreement executed by the testatrix. A verdict was returned in favor of the contestant and, in answer to special interrogatories, the jury found that the execution of both instruments was procured through undue influence. On appeal, the defendant contended that (1) the court erred in denying motions for directed verdict and for judgment notwithstanding the verdict; (2) the verdict was against the manifest weight of the evidence; and (3) the jury was improperly instructed. The same issues are raised in the instant case.

The court in *Swenson,* in addressing the question of whether a fiduciary relationship existed, stated:

"[S]uch a relationship exists where there is a special confidence reposed in one, who by reason of such confidence, must act in good conscience and good faith and with due regard to the interests of the person reposing such confidence. It may exist as a matter of law between attorney-client, guardian-ward, trustee-beneficiary, and the like, or it may be the result of a more informal relationship—moral, social, domestic or even personal in its origin. [Citations.] Where the relationship does not exist as a matter of law, the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion. [Citations.]" (*Swenson*, 92 Ill. App. 2d 88, *100*, 234 N.E.2d 91, 97.)

The *Swenson* court found that evidence adduced at trial supported the finding of a fiduciary relationship.

The instant case is factually similar to *Swenson*. For three months prior to Iva Corbett's death, following the resumption of a close association with Tommie Earl Schwear, Tommie and her husband became Iva's main source of transportation. When the parties went to Wendell Durr's office on July 6, 1977, in order to prepare their wills, discussions with the attorney were held in each other's presence, and they agreed to prepare reciprocal wills. The defendant also was made executor of Iva's will. Furthermore, defendant herself testified that Iva reposed trust and confidence in her. There is ample evidence to establish the existence of a fiduciary relationship.

However, the court in *Swenson* noted: "* * * even though a fiduciary relationship may exist, the dominant party also must have been instrumental in procuring the execution of the will, or participated in its preparation and execution for the presumption of undue influence to arise." (*Swenson*, 92 Ill. App. 2d 88, *100*, 234 N.E.2d 91, 97.) In the instant case, defendants assert that Iva Corbett sought the July 6 meeting with her own attorney in order to exclude Faye Schmidt from her will. Regardless of whether or not this is true, however, the evidence indicates that the Schwears encouraged reciprocal wills. When Iva expressed a desire to leave the realty to Marion Tow, Bill Schwear reminded her of her disagreements with Tow in an indirect attempt to influence the will. Later, the Schwears themselves contacted a different attorney, directed him in preparing the challenged will, and returned with the will to the hospital. It is unrebutted that this attorney had no personal contact with Iva Corbett. While the defendants argue that they were acting as Iva's agent, the evidence amply establishes that they procured the preparation of the will.

In addition to the evidence establishing the existence of a fiduciary relationship, the dependent and dominant roles and the procurement of the preparation and execution of the will are both shown. The will

discloses that the defendant was to receive by far the most substantial benefit from the will's execution. Further, defendant admits that the decedent reposed trust in her and her husband. These factors are sufficient to establish a *prima facie* case of undue influence and are sufficient to require the denial of defendant's motions for directed verdict and for judgment notwithstanding the verdict. *Pedrick v. Peoria & Eastern R.R. Co.*

■■ The evidence presented by the defendants tends to rebut the presumption of undue influence. Defendants urge that the testimony regarding the reconciliation between the testatrix and the defendant and the subsequent disagreements between the testatrix and Marion Tow provide a plausible alternative reason for most of the occurrences testified to. However, the credibility of witnesses is a factor, and essential elements of the Schwears' testimony were directly contradicted by the testimony of Mrs. Corbett's attorney, Wendell Durr. It is the function of the jury to weigh the credibility of those witnesses. Furthermore, the evidence which tended to establish a disagreement between Iva Corbett and Marion Tow is not necessarily inconsistent with the exercise of undue influence on behalf of the Schwears. The disagreements arose from minor incidents which would not normally be anticipated to be the catalyst for the drastic action which Iva Corbett took in changing her will. Perhaps her actions were as much a result of the Schwears' reminders of these "piddly disputes," as testified to by Wendell Durr, as they were a result of the disputes themselves. If such was the case, undue influence would also have been established.

■■ Moreover, in the case at bar, normally absent evidence of specific conduct constituting undue influence was presented. The testimony of Wendell Durr regarding the will conference of July 6, 1977, if believed by the jury, constituted proof of undue influence without reliance upon any presumption. Mr. Durr related that at such meeting defendant's husband attempted to discourage Iva Corbett from leaving her farm to Marion Tow. Undue influence may be the result of activities of third persons as well as a result of actions of direct beneficiaries. Therefore, insofar as Mr. Schwear may have been instrumental in influencing the decedent to favor his wife, his activity may be imputed to his wife. *Swenson v. Wintercorn.*

■■ Furthermore, if a fiduciary relationship were not present in the case at bar, the evidence is sufficient to create a presumption of undue influence. Where one procures the execution of a will largely benefiting himself to the detriment of others having an equal claim to the bounty of a testator who is infirm due to age, sickness or disease, a presumption arises that he exercised undue influence. *Swenson v. Wintercorn.*

Under the test outlined in *Pedrick*, we conclude that it would have been error for the trial court to have directed a verdict for defendant or to

have rendered a judgment for defendant notwithstanding the verdict. In addition, we conclude that the verdict was not palpably contrary to the weight of the evidence.

Finally, defendant contends that the trial court erred in instructing the jury. The two instructions complained of are applicable to the proof of undue influence in will contest cases.

One of the challenged instruction, plaintiff's instruction 17, is a modification of Illinois Pattern Jury Instruction, Civil, No. 200.04 (2d ed. 1971) (hereinafter cited as IPI Civil). Applied to the instant case, IPI Civil No. 200.04, without modification, would provide substantially as follows:

"The plaintiff may establish undue influence as a ground of invalidity in two ways.

First, he may introduce proof of specific conduct alleged to constitute undue influence.

Second, he may establish undue influence as a ground of invalidity by proving each of the following propositions:

1. That Iva Corbett reposed trust and confidence in William Schwear and Tommie Earl Schwear to such an extent that William Schwear and Tommie Earl Schwear could have exerted undue influence, as I have defined that term, on the mind of Iva Corbett;

2. That William Schwear and Tommie Earl Schwear caused the preparation of the document purporting to be the last will and testament of Iva Corbett;

3. That Tommie Earl Schwear received a substantial benefit under the terms of the document.

If you find that the plaintiff has proved undue influence by evidence of specific conduct, then your verdict should be for the plaintiff.

If you find that each of the three propositions has been proved, the law raises a presumption that the document was executed as a result of undue influence and your verdict should be for the plaintiff unless, from your consideration of all the evidence, together with this presumption, you believe that the document was executed as the free and voluntary act of Iva Corbett.

If you find that the plaintiff has not proved undue influence by evidence of specific conduct and, if any of the three propositions has not been proved, or if you believe from all the evidence in the case that, even though the three propositions have been proved, the document was nonetheless executed as the free and voluntary act of Iva Corbett, then your verdict should be for the defendant."

The committee comments to this instruction indicate that it should be given in any case where undue influence is alleged and there is both evidence of particular conduct constituting undue influence and also

evidence tending to show a fiduciary relationship between the testator and the beneficiary. IPI Civil No. 200.03 also is applicable to proof of undue influence; however, it is expressly limited to situations where there is evidence tending to show a fiduciary relationship. Further, the committee comments to IPI Civil No. 200.03 explain that the term "fiduciary relationship" is not used in the instructions because "it is more meaningful to state that concept in terms of its connection with undue influence." IPI Civil No. 200.03, Comment, at 510 (2d ed. 1971).

In the case at bar, plaintiff's instruction 17 apparently was given in reliance on the rationale of *Swenson v. Wintercorn.* In it use was made of the term "fiduciary relationship." In further apparent reliance on *Swenson*, reference was also made to enfeeblement of the testatrix at the time of execution of the will by reason of age or disease. Accordingly, IPI Civil No. 200.04 was modified and given by the court as follows:

> "Second, he [plaintiff] may establish undue influence as a ground of invalidity by proving each of the following propositions:
>
> 1. That [either] Iva Corbett reposed trust and confidence in William Schwear and Tommie Earl Schwear to such an extent that [a fiduciary relationship was created, and that William Schwear and Tommie Earl Schwear] could have exerted undue influence, as I have defined that term, [up]on the mind of Iva Corbett; or
>
> [1a. That Iva Corbett was enfeebled by age and disease at the time of the execution of the will; * * *.]"

Plaintiff's instruction No. 16, a non-IPI instruction defining the term "fiduciary relationship," was also given. It stated:

> "As to the fiduciary relationship, such a relationship exists where there is a special confidence reposed in one, who by reason of such confidence must act in good conscience and good faith and with due regard to the interests of the person reposing such confidence. It may exist as a matter of law between attorney-client, guardian-ward, trustee-beneficiary, and the like, or it may be the result of a more informal relationship—moral, social, domestic or even personal in its origin. Where the relationship does not exist as a matter of law, the proof must be clear and convincing."

This instruction was taken verbatim from language found in *Swenson v. Wintercorn.*

■■ Supreme Court Rule 239 (Ill. Rev. Stat. 1979, ch. 110A, par. 239) provides that when the court determines that the jury should be instructed on a particular subject, an Illinois Pattern Jury Instruction shall be used if an applicable instruction is available. (*Herbolsheimer v. Herbolsheimer* (1977), 46 Ill. App. 3d 563, 361 N.E.2d 134.) Because of its modification, the trial court apparently concluded that IPI Civil No. 200.04 was insufficient to cover the situation of the instant case or that it inaccurately

stated the law. We are of the opinion that neither conclusion was warranted.

As we have noted, a presumption of undue influence may arise where, among other circumstances, the existence of a fiduciary relationship is established between testator and beneficiary. Whether or not the testator is enfeebled by age or disease is a factor to be considered in determining that the presumption should be raised. However, as stated in the committee comments, the pattern instruction specifically does not use the term "fiduciary relationship" because "it is more meaningful to state that concept in terms of its connection with undue influence."

As used in the context of the law of undue influence, the term "fiduciary relationship" is merely an abbreviated method of stating that the testator reposed trust and confidence in the beneficiary to such an extent that the beneficiary could have exerted influence which caused the testator to make a disposition of his property that was not his free and voluntary act. (See IPI Civil Nos. 200.03, 200.04, and 200.09.) Where trust and confidence is reposed in the beneficiary to that extent, a fiduciary relationship is established for purposes of ascertaining the existence of undue influence. Where trust and confidence are not reposed in the beneficiary to such an extent, the relationship is not established.

The pattern instructions deal solely with the extent of confidence placed in the beneficiary; they do not focus on the source of the parties' relationship. The relationship may exist as a matter of law or may result from an informal relationship or the enfeebled health of the testator. So long as the beneficiary is placed in a position where he may have exerted undue influence, the source of such power over the testator is of no consequence. Furthermore, in addition to proof of the opportunity to exert undue influence, additional evidence must be introduced before a presumption will be raised that the will in fact resulted from undue influence. Thus, the concept of fiduciary relationship is meaningful only "in terms of its connection with undue influence."

■■■ Since the pattern instructions explicitly exclude the term "fiduciary relationship," the addition of that term and the reference to an "enfeebled testator," in IPI Civil No. 200.04, was totally unnecessary and constituted error. The pattern instruction was intended to focus the jurors' attention on the connection between the relationship and the issue of undue influence, and, as given, it encompassed the sources of that relationship which the parties sought to add by modification. However, while the trial court erred in modifying IPI Civil No. 200.04 and adding an instruction which defined "fiduciary relationship," we believe the error was harmless in the instant case. An error in instructing the jury in a case contesting a will is not grounds for reversal unless the error is such as to deny

substantial rights or materially prejudice the case before the jury. *Hocker-smith v. Cox* (1950), 407 Ill. 321, 95 N.E.2d 464.

■■ As we have previously noted, evidence was introduced both of specific conduct alleged to constitute undue influence and of the elements necessary to raise the presumption of undue influence. Therefore, use of IPI Civil No. 200.04 was justified. While the modifications of IPI Civil No. 200.04 were erroneous and made the instruction less concise, they did not materially alter the elements necessary to raise the presumption of undue influence. Additionally, the modifications could not have altered that portion of the instruction relating to specific acts of conduct constituting undue influence at all. Therefore, the modifications of IPI Civil No. 200.04 did not materially prejudice the case before the jury, and the error was harmless.

Accordingly, the judgment of the trial court setting aside the July 21, 1977, will of Iva Corbett, as the product of undue influence, is hereby affirmed.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE HARRISON, dissenting:
I respectfully dissent.
The majority holds that plaintiff's instructions 16 and 17 which were given by the trial court over defendant's objection, were erroneous. For the following reasons, I am compelled to dissent from the majority holding that these errors were "harmless." "The importance of correct instructions was commented on in the case of *Sharp v. Brown*, 349 Ill. App. 269, the court there saying: 'It has long been the law that a jury must be especially accurately instructed if the case be one where the facts are close and where a verdict could easily favor either party in the suit.' This is very true where the evidence is in dispute * * *." (*Parkin v. Rigdon* (1954), 1 Ill. App. 2d 586, 592, 118 N.E.2d 342.) The evidence of the Schwears' abuse of their admitted position of trust and confidence with the decedent was in dispute, hence more than a cursory examination of the effect of the erroneous instructions is mandated.

The reference in instruction 17 to Iva Corbett as "enfeebled by age and disease" was unsupported by any evidence adduced at trial. Quite to the contrary, the evidence indicated that she was clear-headed and alert. By suggesting that the decedent may have been so enfeebled, the instruction impermissibly suggested that the decedent was susceptible to influence. This may have predisposed the jury to find that undue

influence existed. Appellant was thereby prejudiced since the jury would have decided the facts partially on the basis of material not in evidence, but contained only in the instruction. (*Challiner v. Smith* (1947), 396 Ill. 106, 123, 71 N.E.2d 324.) Concomitant with this, the giving of instruction 17 was also error in that the instruction indicated that undue influence may be established by proof of specific conduct, and no evidence of specific conduct constituting undue influence concerning the will proffered by the Schwears was introduced at trial. The will written in Durr's office was never signed, and there was no showing that the second will was factually related to the last purported will. The instruction prejudiced appellant, and hence was reversible error, by suggesting, without basis, to the jury a ground on which a plaintiff's verdict could be returned. If any instruction was warranted by the evidence, IPI Civil No. 200.03, and not IPI Civil 200.04, should have been given to conform with the evidence actually before the jury. Compare Illinois Pattern Instructions, Civil, No. 200.03 and No. 200.04 (2d ed. 1971) (hereinafter cited as IPI Civil).

The instruction defining fiduciary relationship also prejudiced appellant in that the instruction may have misled the jury. This non-IPI Civil instruction was formulated by the trial court in apparent reliance on *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 234 N.E.2d 91, on which case the majority also relies. *Swenson* asserts that a fiduciary relationship "exists where there is a special confidence reposed in one, who by reason of such confidence, must act in good conscience and in good faith and with due regard to the interests of the person reposing such confidence." (*Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 100.) This somewhat circular definition misstates the law as announced by our supreme court; a definitional requirement of the concept of fiduciary relationship is that superiority and influence result from the relationship of confidence and trust. (*Wiik v. Hagen* (1951), 410 Ill. 158, 163, 101 N.E.2d 585, 587; *Kolze v. Fordtran* (1952), 412 Ill. 461, 468, 107 N.E.2d 686.) Absent resulting superiority and influence, the mere fact of mutual trust and confidence is not enough to constitute a fiduciary relationship. (*Redmond v. Steele* (1955), 5 Ill. 2d 602, 610, 126 N.E.2d 619.) Were this otherwise, even the most casual and mundane relationship might be elevated to fiduciary status based on a commonplace degree of trust and confidence. The line of cases issuing from the supreme court, cited above, holds consistently that to create a fiduciary relationship, a position of superiority and influence must result from the repose of trust and confidence. By failing to indicate that superiority and influence are prerequisites to a finding of fiduciary duty, even where trust and confidence exist, *Swenson* misstates the law. It necessarily follows that the jury instruction was fatally defective, since the jury could have been induced to find that a fiduciary relationship existed where the elements necessary therefor were lacking.

(*Belfield v. Coop* (1956), 8 Ill. 2d 293, 311, 134 N.E.2d 249.) The appropriate approved pattern instruction, IPI Civil No. 200.03, correctly states the law by indicating that only if trust and confidence are reposed "to such extent that [beneficiary's name] could have exerted undue influence * * *," is a fiduciary relationship formed. (The Comment to IPI Civil No. 200.03 indicates that the "instruction does not use the term 'fiduciary relationship' because it is more meaningful to state that concept in terms of its connection with undue influence." (IPI Civil No. 200.03, Comment, at 510) (2d ed. 1971).) "Supreme Court Rule 239 requires that Illinois Pattern Jury Instructions be given when the jury is to be instructed on a subject, if an applicable instruction is available. It has long been and will continue to be our policy to require the use of the Illinois Pattern Jury Instructions unless the trial judge, when considering the facts and prevailing law, finds that the instruction inaccurately states the law." (*Herbolsheimer v. Herbolsheimer* (1977), 46 Ill. App. 3d 563, 567, 361 N.E.2d 134.) Because the instruction which was given did not provide the jury with the correct law to apply to the facts of the case, and the pattern instruction would have embodied the correct rule, appellant was prejudiced and the decision of the trial court should be reversed. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 311.) The attempt to define fiduciary duty in this case only serves to point up the wisdom of utilizing the approved pattern instructions, where applicable, so as to avoid this type of prejudicial confusion.

In addition, if the trial court had properly applied the law governing fiduciary relationships, a directed verdict for defendant would have been the only appropriate disposition of the case, since no evidence was adduced at trial to support submission of the case to the jury on the issue of fiduciary relation. Although the decedent had an attorney draw up reciprocal wills for her and for defendant, these were never executed. This evidence of the Schwears' unsuccessful attempt to influence the decedent only indicates that the relationship between the Schwears and Iva Corbett was not a fiduciary relationship. None of plaintiff's other evidence went to the existence of superiority and influence over the decedent, so there was no evidence before the court which tended to establish one of the elements of plaintiff's cause of action. Defendant's motion for a directed verdict should therefore have been granted. (*Knudson v. Knudson* (1943), 382 Ill. 492, 499-500, 46 N.E.2d 1011.) Consequently, I would reverse the decision of the trial court and enter judgment accordingly.