SHARON A. LAW, Indiv. and as Adm'r of the Estate of Dean R. Law, Deceased, Plaintiff-Appellant, *v.* CENTRAL ILLINOIS PUBLIC SERVICE COMPANY *et al.*, Defendants-Appellees.

Fourth District   No. 15881

Opinion filed July 21, 1980.

Nicholas J. Neiers and William O. Martin, Jr., both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellant.

Welsh, Kehart & Shafter, P. C., of Decatur (Michael J. Kehart and Richard J. Welsh, of counsel), for appellees Lorton Coleman and Jerry Blackwell.

Robert D. Owen and Darrell F. Parish, both of Owen, Roberts, Susler & Taylor, of Decatur, for appellee Royal Webber.

Walden, Cole, Ohlsen & Coryell, Ltd., of Decatur (Robert L. Cole, and James R. Coryell, of counsel), for appellee Central Illinois Public Service Company.

Randall B. Ehlers and William A. Allison, both of Bane, Allison & Saint, P. C., of Bloomington, for appellees City of Pana and Michael Harris.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Decedent was electrocuted.

Contributory negligence?

The jury said yes.

We affirm.

The jury returned a verdict in favor of all defendants in this wrongful death action and also found, by special interrogatories, that the plaintiff's decedent was both contributorily negligent and a volunteer.

The fatal sequence of events began when defendant Weber entered into a contract to raze a water tower located to the west of Washington School in Pana. Approximately a week and a half prior to Law's death,

Weber took his boom truck to the schoolyard. On the day of Law's death, Weber stopped work about noon. When he left, the boom was up in the air and the truck was parked on a hill.

That evening, the boom truck rolled down the hill and came to rest blocking the street across from decedent's parents' home. The truck's boom was in contact with some wires. Dean Law called the Pana police department. Defendant Michael Harris, the officer on duty, and defendant Jerry Blackwell, a tow truck owner and operator, responded. Harris and Blackwell were unsure as to whether the wires touching the boom were telephone or electrical. Harris requested defendant Central Illinois Public Service Company (CIPS) to send a man to the scene. Shortly thereafter, Charles Stewart, a CIPS employee, arrived and told them the wires did not belong to CIPS but were telephone lines. Stewart left shortly thereafter.

Law suggested that the boom truck be taken far enough up the hill so that it would not coast back down again. No one objected to this idea. Officer Harris testified that Blackwell then stated his need for someone to steer the truck. According to Harris, this request was not directed to him. Dean Law was closest to the boom truck and got in. Harris denied telling Law to steer so that he would be free to direct traffic. Law's parents testified that they overheard their son ask Officer Harris whether there was anything he could do to help. Harris responded by asking Dean to steer the boom truck so that Harris could watch for traffic.

Blackwell, driving the wrecker, began to tow the boom truck up the hill. The truck was being pulled backward with Dean Law steering it. Suddenly, there was a bright flash, and lights went out in the neighborhood. The boom had broken one of the electrical wires that ran across the schoolyard and was in contact with another wire.

At this time Harris told Blackwell and Law to stay in their trucks. He ran to his car and called the radio dispatcher, asking her to get the CIPS man, Stewart, to return. Unfortunately, the line was busy.

Suddenly, the back wheels on the tow truck exploded and began to burn. Flames were shooting 8 to 10 feet in the air. Harris ordered the men to remain in their trucks. Blackwell, however, jumped out of the wrecker and landed safely.

Harris continued to communicate with Dean Law. Harris testified that the decedent told him, "It's going to blow, I've got to get out." Law told Harris several times that he was getting out because he was afraid that the gas tank on the tow truck would blow up. Law got onto the running board of the truck. When he stuck his foot out a short distance from the ground, electricity arced between the ground and his foot. He appeared to be frozen to the truck. Dean Law was electrocuted.

Plaintiff raises numerous issues on appeal. Plaintiff claims that

reversible error occurred when the trial court excluded depositions of defendant Harris and Stewart. Plaintiff also claims that the trial court erred in instructing the jury, and during the cross-examination of Dorene Law, decedent's mother. Finally, plaintiff contends that the trial court's rulings during the economist's testimony and that of witness Mary Gooden constituted reversible error and that its rulings on evidentiary matters in general were prejudicial to the plaintiff.

The scope of our review is a decidedly narrow one. As noted above, the jury, via special interrogatory, found the decedent guilty of contributory negligence. The plaintiff has not claimed, either in her post-trial motion or here on appeal, that the response to the contributory negligence special interrogatory was against the manifest weight of the evidence. As such, we are conclusively bound to find that the special findings were supported by the evidence. (See *Quagliano v. Johnson* (1968), 100 Ill. App. 2d 444, 241 N.E.2d 187; *Fopay v. Noveroske* (1975), 31 Ill. App. 3d 182, 334 N.E.2d 79.) We are, however, permitted to consider the trial errors. *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533; *Lewis v. W. F. Smith & Co.* (1979), 71 Ill. App. 3d 1032, 390 N.E.2d 39.

We find that no reversible error has occurred in relation to the contributory negligence finding. Since contributory negligence is a complete defense in an action premised on defendant's negligence, we only address those issues relating to the contributory negligence finding.

### I

Plaintiff's initial contention concerns an attempt to introduce certain evidence relating to the decedent's state of mind. Defendant Harris, when questioned by plaintiff under section 60, stated that he spoke with defendant Blackwell and decedent while they were on the truck following the explosion of the tires. He had the opportunity to observe the decedent's demeanor and stated that decedent "* * * was nervous, tense. He told me that he was getting out of the truck." Plaintiff then asked Harris if the decedent's remarks were responsive. The trial court sustained objections to this testimony. Harris said that the decedent did not keep repeating the same phrase over and over again, although he noted that on at least two occasions decedent stated he was "getting out" of the truck. On redirect examination of defendant Harris, the following transpired:

"Q Now, Mr. Harris, you talked about the number of times you were talking to Dean Law giving him instructions. Right?

A Yes, sir.

Q And you said he was nervous, didn't you?

A Yes sir.

Q And you were concerned that perhaps he wasn't properly receiving instructions from you. Isn't that right?

MR. COLE: Object to what he was concerned about.

THE COURT: The objection is sustained. It seems to me we have gone over this once Mr. Martin. Let's not repeat.

Q Would you say, Mr. Harris, that Dean Law was scared?

MR. OWEN: Object. That calls for a conclusion. He has stated that he observed about it.

MR. KEHART: Objection.

MR. CORYELL: Objection.

THE COURT: Sustained."

Outside the presence of the jury, plaintiff argued that Harris, even as a nonexpert, was qualified to give opinion testimony concerning decedent's fear. Plaintiff noted that in his deposition Harris stated that decedent was "scared, very scared, too scared to think straight, * * *."

The trial court, following argument, refused to allow the testimony indicating that fright was not susceptible to opinion testimony. On appeal, plaintiff argues that the trial court erred in denying her the opportunity to impeach Harris and that the decedent's fear is properly susceptible to opinion evidence.

Treating the latter question first, we agree that a nonexpert witness' opinion concerning a person's fear is the proper subject of opinion testimony.

As a general rule, and under ordinary circumstances, an opinion or conclusion of a witness may not be received in evidence. (32 C.J.S. *Evidence* §438 (1964); *Henry v. Stewart* (1900), 185 Ill. 448, 57 N.E. 190.) This rule is relaxed, however, because any conceivable statement, even the most specific, detailed and factual, is in some measure the product of inference and reflection as well as observation and memory. (McCormick, Evidence §11, at 23 (2d ed. 1972).) In recent times, the rule against opinion testimony has been tempered to the point that the prevailing practice in respect to the admission of the opinions of nonexpert witnesses is a rule of preference—the more concrete description is preferred to the more abstract. McCormick.

It has been held that a nonexpert may state an opinion on such matters as testimentary capacity (*In re Estate of Veronico* (1979), 78 Ill. App. 3d 379, 396 N.E.2d 1095); distance (*Vallas v. Johnson* (1979), 72 Ill. App. 3d 281, 390 N.E.2d 939); rate of speed (*O'Brien*); and intoxication (*Doria v. Costello* (1974), 22 Ill. App. 3d 505, 318 N.E.2d 40).

As plaintiff points out in her brief, the question of whether a witness may testify concerning another person's fear appears to be a question of

first impression in this State. Similar questions have, however, been addressed. Our supreme court has stated that a witness may not express an opinion indicating that a person was vindictive. (*Ames v. Snider* (1873), 69 Ill. 376.) It has also been held that it is proper for a witness to testify that a person was nervous, excited, or upset. *Dimick v. Downs* (1876), 82 Ill. 570; *People v. Hamilton* (1915), 268 Ill. 390, 109 N.E. 329; *People v. Hauke* (1929), 335 Ill. 217, 167 N.E. 1.

The general rule, applied in other jurisdictions, appears to be in favor of the admission of this testimony. See Annot., 69 A.L.R. 1168 (1930).

■■ Clearly, the emotion of fear is a subjective state of mind. It is, however, manifested by objective facts. The quiver of a voice, the shaking of a hand, or the raising of an eyebrow are all physical actions which, when combined with surroundings likely to induce fear, would lead one to the conclusion that a person is afraid. If a witness were able to testify photographically, there would be no need for him to state that a person was nervous, upset, angry, afraid, curious, disgusted, serious, etc. Unfortunately, the inefficiency of the process of eyewitness testimony, compounded by the inaccuracies of the English language, necessitates the admission of this type of testimony. Thus, we hold that Harris, as a nonexpert, should have been allowed to testify concerning decedent's fear.

Having found that Harris was qualified to testify on the subject, we now look to see whether the trial court erred in not allowing presentation of the deposition testimony to impeach the witness. We hold that it did not.

■■ Generally, a showing that at a prior time a witness made statements inconsistent with his or her trial testimony on a material matter is an appropriate method of testing the credibility of the witness. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) Matters of impeachment are generally within the discretion of the trial court. (See *Wenzell v. MTD Products, Inc.* (1975), 32 Ill. App. 3d 279, 336 N.E.2d 125.) It is clear, however, that in order for the deposition testimony to be admissible as proper impeachment, it must contradict the witness' in-court statements. See *O'Brien; Taylor v. Carborundum Co.* (1969), 107 Ill. App. 2d 12, 246 N.E.2d 898.

Our examination indicates that the evidence that plaintiff's counsel was attempting to elicit for impeachment purposes was not contradictory to the witness' in-court testimony. As noted above, Harris stated that the decedent was "nervous, tense." At no time did Harris state that decedent was unafraid.

■■ We hold that it was not error to preclude the attempted impeachment and that, given the information available to the jury, any error would have been harmless.

## II

The plaintiff also raises seven arguments based on the instructions which were given to the jury. Of these, only one remotely relates to the contributory negligence finding. The jury was given an instruction derived from *Illinois Central R.R. Co. v. Oswald* (1930), 338 Ill. 270, 170 N.E. 247, which stated:

"For a negligent act or omission to be the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which might result from his act. If the negligence does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of the injury."

Additionally, the jury was given Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971), which defines proximate cause.

The plaintiff now complains that the giving of the non-IPI instruction was error because the IPI adequately stated the law (73 Ill. 2d R. 239(a); *Ryan v. Fleischman* (1978), 64 Ill. App. 3d 75, 380 N.E.2d 1099), and that the giving of both instructions was repetitious and confusing. *Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 304 N.E.2d 677.

■ As defendant Royal Weber points out, however, the non-IPI instruction was not repetitious in that it added an additional element to the IPI instruction—intervention. This instruction was crucial to defendant Royal Weber since his defense was that he merely furnished a condition which permitted decedent's injury. While IPI Civil No. 12.05 was the preferred instruction in this case, we do not find any error which would have had a prejudicial effect on the contributory negligence finding.

## III

Plaintiff, without citation to authority, claims she was prejudiced by certain evidentiary rulings by the trial court. Specifically, she claims (1) the court "sustained literally scores of defendant's general objections, never requiring a specific objection," and (2) the court supplied objections for the defendants. Plaintiff asserts that the court's conduct served to discredit her case in the eyes of the jury.

■ Wide latitude must be allowed the trial judge in conducting the trial and it is only where his conduct or remarks are of such nature as would ordinarily create prejudice in the minds of the jurors that they constitute reversible error. (*Clamage v. Shapiro* (1977), 48 Ill. App. 3d 90, 365

N.E.2d 471.) Although the trial court's remarks were abrupt, we do not find reversible error. When the record of over 1,000 pages is viewed as a whole, no error has occurred.

## IV

■ Finally, the plaintiff contends that cumulative effect of all the alleged errors resulted in substantial prejudice, depriving her of a fair trial. Plaintiff's position is deflated considerably by the fact that we only address those errors as they relate to the contributory negligence finding.

Without reiterating our analysis under the first three sections of this opinion, cumulative error has not occurred.

Affirmed.

GREEN and TRAPP, JJ., concur.