THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH RICKETTS, Defendant-Appellant.

Fourth District   No. 17571

Opinion filed October 18, 1982.—Rehearing denied November 16, 1982.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael M. McFatridge, State's Attorney, of Paris (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions upon jury verdicts of the offenses of home invasion, robbery, burglary, and felony theft. The sentence of eight years imposed was only upon home invasion.

Defendant argues that the trial court committed reversible error by (1) the partial granting of a motion *in limine* as to cross-examination of the principal prosecution witness concerning a pending misdemeanor charge and, (2) in permitting a police officer "to give opinion testimony" as to whether the sole of defendant's boot matched a print left on the floor of the victim's house.

The essential framework of evidence is that on January 29, 1981, defendant, accompanied by his friends, Ted Lucas and Elmer Cusick, went to the rural home of the victim for the stated purpose of getting a part for an air conditioner. Defendant was distantly related to the victim, Griff Miller, a man of some 90 years.

The victim's son, Carl Miller, and his daughter, Faye Gard, also lived in the home, but the latter was away on that day. At about 2 p.m., Carl Miller and defendant talked for a few minutes on the back porch and, at the request of the former, defendant drove with Lucas and Cusick to a farm silo, a mile or more distant, to assist Miller with some work. Defendant and his companions soon left but Miller remained to feed the cattle—a chore taking about three hours. It is the prosecution's contention that defendant, Lucas, and Cusick returned to the farm home; that Lucas and Cusick forced Griff Miller into the bathroom so violently that he suffered a broken hip and other injuries; and that defendant then entered and took firearms, silverware and jewelry. The victim was found lying in the blockaded bathroom at about 5 p.m. On January 30, Lucas and Cusick were arrested on unrelated charges and they have not been charged with this offense. Griff

Miller was unable to identify the men who seized him and "threw him" into the bathroom.

At the time of the offense Debbie Lucas, a principal witness for the prosecution, was the estranged wife of Ted Lucas. At the time of the trial they were divorced. Defendant had been a friend of each for some period of time.

Apparently acting on the information received, local and state officers interviewed Debbie Lucas on April 1, 1981, and obtained her statement. This was supplied to defendant in discovery and presumably coincided with her testimony as there was essentially no cross-examination as to the facts stated into evidence.

In brief, on Sunday, February 1, 1981, at about noon defendant telephoned Debbie Lucas at the home of her mother and requested that she come to his home. She drove there with a companion. Defendant's ostensible purpose was to inquire about Ted Lucas and why he was incarcerated. The witness could not tell him what the charges were. Defendant then insisted on talking outside of the presence of the companion, and asked the witness to drive him to a place not then stated. After taking the companion home, the defendant and the witness proceeded at his direction to a small schoolhouse about eight miles from Paris. Defendant went to an adjacent propane gas tank and brought to the automobile several guns, a box or chest of silverware, and some items of jewelry. He then drove the car some distance along the road and stopped at a creek where he took the box of silverware along the bank some distance, and then returned and took the firearms some distance along the creek bank on the opposite side of the road. On April 2, Debbie Lucas took the officers to the schoolhouse and to the creek. A search party recovered a substantial part of the silverware and some of the other items taken.

Defendant, Ted Lucas, and Cusick testified for the defense where each admitted that they had driven to the Miller farm and to the farm silo, but each testified that they had returned directly to Paris and dispersed for various purposes. Defendant also admitted that he telephoned Debbie Lucas on February 1 and talked with her privately, but that he only asked her concerning the arrest of Ted Lucas. He testified that they were together only about 20 minutes, and that she then drove him to the home of his friend, Frank. A man and wife who were friends of defendant testified that he came to their place on business on that date—one said before 3 p.m. and the other said after.

Upon the sum of the evidence, it is apparent that Debbie Lucas was a critical witness. The record concerning the challenged motion *in limine* discloses that on July 29, 1981, the witness, Debbie Lucas,

was charged with battery. The State's Attorney described the event as an altercation with two other women, who on July 31 asked that the charge be dismissed. Defendant was advised of the fact in the State's Attorney's response for discovery.

The motion was argued, although not in specific terms of cross-examination as to possible bias of the witness. The trial court spoke of it "only as a charge of simple battery," and that he did not believe that the charge supported impeachment of credibility. In ruling, the court stated:

> "The motion will be granted as to any reference to this particular charge. However, I think it would be a proper question by the defense, if she takes the stand, whether she's received any promise or reward for her testimony, but without referring to the charge itself."

Examination of the record discloses no attempt to cross-examination in the context of promises by the State's Attorney, or any association with him. Cross-examination as to bias appears to be directed to the witness' attitude concerning her former husband, Ted Lucas, and the friendship between the parties.

We must conclude that the trial court erred in partially granting the motion *in limine* as to the cross-examination of Debbie Lucas within the rule stated in *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 77, *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, and *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526. Each holds that cross-examination is a matter of a constitutional right to confront witnesses for the purpose of showing bias in the context that the witness may be subject to undue pressure or coercion by prosecutorial authority when giving testimony. In *Alford*, bias is framed as the product of a "promise or expectation of immunity, or under the coercive effect of his detention." (282 U.S. 687, 693, 75 L. Ed. 624, 628, 51 S. Ct. 218, 220.) Confrontation of witnesses for such constitutional purpose is distinct from impeachment of credibility by showing conviction of an offense. In *Alford*, the court stated:

> "[N]o obligation is imposed on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self incrimination, properly invoked."

282 U.S. 687, 694, 75 L. Ed. 624, 629, 51 S. Ct. 218, 220.

Careful examination of the facts present in *Davis* and *Wilkerson* disclose substantial differences from this record and supports the conclusion that the error of the trial court does not require reversal here.

The opinion in *Davis* observed that the witness was on probation and that his testimony of finding a stolen safe and his identification of defendants was under circumstances which might support a conclusion that the witness had himself committed the burglary at issue. In *Wilkerson*, the witness was under several pending felony charges. Defendant's offer of proof disclosed that the State's Attorney had stated that he had not made up his mind concerning the future felony prosecution of the witness, but that after the conclusion of the pending trial he would try to work out something with the attorney representing the witness. The potential pressure, or coercion, by reason of such circumstances is plainly apparent.

We conclude that the error found here does not require reversal for the reason that the facts in the record bring it within the ambit of the rationale in *People v. Eddington* (1979), 77 Ill. 2d 41, 394 N.E.2d 1185. There the trial court granted a motion *in limine* barring cross-examination upon unrelated drug charges then pending. The court stated:

> "We do not believe that these matters should be resolved solely *in limine*. In situations involving assessment of credibility, the jury should have a right to consider the pending charges, and, of course, the prosecution should have the right to show that no leniency was offered and that none was expected. The jury would then be able to consider any subliminal influences that could be exerted by the particular situation." 77 Ill. 2d 41, 46, 394 N.E.2d 1185, 1188.

The opinion then noted that the testimony which the witness gave had been recorded in statements at a time prior to the filing of the charges pending against the witness, and had been furnished to the defendant, saying:

> "In this case, however, following a lengthy hearing *in limine*, the trial court was satisfied that the testimony of the witness, which *had been recorded prior to the cannabis charge* that was then pending against the witness, could not have been affected by any bias or interest arising out of this later charge." (Emphasis added.) 77 Ill. 2d 41, 46, 394 N.E.2d 1185, 1188.

Here, the recorded statement of Debbie Lucas, which was furnished to defendant in discovery, had been taken about four months prior to the filing of the battery charge against her. That statement had been substantially verified by the search the officers had made in April preceding the September trial. Again, we have found virtually no attempt to cross-examine the witness concerning any deviation from facts recorded in her statement given to police officers four

months earlier, no attempt to cross-examine her as to association with the prosecutor, or any promise made by him to her, and no cross-examination suggesting other bias or hostility toward defendant. While we find that the trial court erred in limiting the cross-examination even partially, we conclude that we are not required to reverse.

Sheriff's Officer Busby testified concerning a boot print found in the dust on the dark wooden floor of a second story bedroom. He measured its length at 11½ inches and sketched the details observed, including ridges across the sole and areas which appeared to be worn. Subsequently, the print was photographed to scale and the picture was introduced into evidence. When defendant was arrested his boot was seized and at trial introduced into evidence. Defendant admitted that he was wearing the boot in January 1981.

Busby testified that he had measured the respective lengths of the boot and of the boot print, and that each was 11½ inches long, and he testified to the apparent worn spots on the sole and heel. The examination continued with the question:

> "Q Do those worn spots correspond to the spots on the photograph being a representation of the footprints as you saw it?"

The objection made and overruled was "No foundation."

In defendant's brief, the issue is stated to be:

> "Whether a non-expert police officer should have been permitted to give opinion testimony ***."

In the post-trial motion it was stated that the trial court erred in permitting testimony:

> "[A]bout similarities between a photograph of a shoe print and the tread of a boot taken from the Defendant."

In the body of the brief, defendant argues:

> "To avoid misunderstanding, it must be emphasized that the issue being raised is not that Detective Busby was not an expert at footprint comparison. There is no question that expert testimony is not required for footprint comparison, and in fact is unnecessary and inadmissible."

■ We find the framing of the arguments to be inconsistent and shifting in focus. Suffice to say that the objection "No foundation" as made at trial could only be deemed by the trial court to refer to expert testimony and, on appeal, cannot be transmogrified into an objection that expert opinion is inadmissible because it is unnecessary. This is particularly so since the objection made to similar questions immediately preceding was stated more fully "No foundation that this individual is an expert to make such a conclusion." The scaled photograph

of the boot print and the boot itself were in evidence for purposes of comparison by the jury. The testimony objected to was illustrative of the observations to which Busby testified, and did not undertake to state as a matter of expert opinion that the boot in evidence made the print shown by the photograph in evidence.

Assuming arguendo that a factor of lay opinion is found in the record, such testimony comes within the rule of *People v. Burton* (1972), 6 Ill. App. 3d 879, 286 N.E.2d 792, *appeal denied* (1972), 52 Ill. 2d 598, *cert. denied* (1973), 411 U.S. 937, 36 L. Ed. 2d 399, 93 S. Ct. 1917, and *People v. Stokes* (1981), 95 Ill. App. 3d 62, 419 N.E.2d 1181, holding that a lay witness may express an opinion where such opinion is one that men in general are capable of making and accustomed to make, but it is difficult or impossible for the witness to reproduce the totality of the conditions perceived by the witness. We find no error.

The judgment of the trial court is affirmed.

Affirmed.

WEBBER and LONDRIGAN, JJ., concur.