JEFFREY G. ZOERNER *et al.*, Plaintiffs-Appellants, v. LEONORE IWAN, as Special Adm'x of the Estate of Rhonda M. Cashmore, Deceased, *et al.*, Defendants-Appellees.

Second District No. 2—92—0851

Opinion filed September 7, 1993.

James Geis, of Chicago, for appellants.

Glen E. Amundsen and D. Dean Mauro, both of Querrey & Harrow, Ltd., of Waukegan, and Michael Resis, of Querrey & Harrow, Ltd., of Chicago, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Jeffrey Zoerner, was injured when the van he was driving collided with a car driven by Rhonda Cashmore. Ms. Cashmore died in the accident. Zoerner subsequently brought this personal injury action against the administratrix of Ms. Cashmore's estate. Plaintiff contends on appeal that (1) the trial court erred in barring certain testimony critical to his case, and (2) improprieties in defense counsel's closing argument denied him a fair trial.

The collision occurred on Route 173 in Lake County at approximately 3:05 in the morning on Sunday, April 29, 1990. Plaintiff, who was alone, drove westbound in a Chevrolet van. Rhonda Cashmore, also alone, drove a Dodge Colt eastbound. The two vehicles collided head on in the westbound lane. There was no evidence of any evasive maneuvers by either driver. The plaintiff's reconstruction expert and Lake County Sheriff's Deputy Roger Barrette, who investigated the accident and testified for the defense, agreed the cars collided in the westbound lane while traveling in exactly opposite directions.

Both drivers were intoxicated as defined by statute. The parties stipulated that tests performed during the autopsy on the body of Ms. Cashmore revealed a blood-alcohol content of .108 and a urine alcohol content of .170 grams percent at the time of her death. They stipulated also to the blood-alcohol content of plaintiff's blood at various times on the day of the collision. At 4:11 a.m. it was .247; at 5:40 a.m. it was .160; and at 1:44 p.m. it was .010.

Deputy Barrette, who arrived at the scene at approximately 3:30 a.m., reported that plaintiff, while still strapped in the driver's seat, had told another deputy that he was not driving, that he had been in the backseat, and that someone else was driving. After being placed in an ambulance, plaintiff repeated to Barrette that he had not been driving at the time of the collision.

A couple of hours later, about 5:20 a.m., Barrette spoke with plaintiff in the X-ray room of the hospital. According to the deputy's testimony, plaintiff was not agitated or upset, was much calmer than he had been at the scene of the accident, seemed to understand the questions being asked, neither asked to have questions repeated nor

hesitated in his responses, and never lost consciousness. In the course of the interview plaintiff related his phone number and address. The address corresponded to the address on his driver's license. When the deputy asked what happened, plaintiff said that he was in the wrong lane. When questioned further, plaintiff stated that he had been in the wrong lane for about five seconds when the accident happened and that he was going too fast.

During cross-examination Barrette added that when he spoke with him at the hospital plaintiff also said he was driving eastbound and that he had been out dancing at the Holiday Inn. Barrette conceded that plaintiff's statement, that he was in the wrong lane when the accident happened, was not true. There was apparently no basis, either, for plaintiff's claim to have been at the Holiday Inn. Barrette also indicated his belief that the van was not traveling over the speed limit and that speed was not an issue in the case.

Plaintiff, who was 26 years old, testified that between dinner on Saturday evening and around 1:30 Sunday morning he was out with a friend and drank approximately 12 to 14 beers. After the friend dropped him off at home around 2 a.m., he took the keys to his parents' van and started driving to a place called All Stars. He had no recollection about the circumstances of the accident. Nor did he remember telling Deputy Barrette that he had been in the wrong lane and going too fast.

Plaintiff's mother, a licensed practical nurse, testified that her son was thrashing around, looked terrified, and did not seem to understand anything at 7:30 a.m. when she arrived at the hospital. According to his father, plaintiff looked very uncomfortable, was in a lot of pain, thrashed about on the hospital cart, and was drifting in and out of consciousness when he saw him early that morning. On cross-examination plaintiff's father said his son recognized him, and he had the impression plaintiff was coherent.

Dr. Michael Kaufman, an expert witness for the defense, testified based on an examination of the records and reports relating to the accident. He indicated that the level of alcohol concentration in plaintiff's blood would produce a severe impairment in the ability to drive an automobile, including the ability to perceive how fast one was going and the ability to stay in one's own lane. However, in the doctor's opinion, plaintiff's blood alcohol, in and of itself, did not render him incapable of giving appropriate answers to questions posed to him. A nurse's notation in the hospital record stated that, at 4:30 a.m., plaintiff was alert and oriented. According to Dr. Kaufman, these terms indicated, essentially, that the patient's brain was working properly.

"Alertness" referred to the level of consciousness and "oriented" related to one's ability to know the time, date, one's current location, and other people. The doctor summed up that plaintiff's ability to respond was not impaired prior to giving his statement to Barrette because there was no evidence of any head trauma or loss of consciousness, he scored the highest level for cognitive functioning on the Glascow coma scale, and his vital signs indicated he was stable, not in shock and having no problems with cerebral circulation. Plaintiff offered no expert testimony to rebut or otherwise contradict Dr. Kaufman's testimony.

Prior to trial the plaintiff filed a motion *in limine* to bar the introduction of any opinions or conclusions by Deputy Barrette regarding the reliability of the statements made by plaintiff that he was in the wrong lane and going too fast. Plaintiff argued that since the deputy had no substantial medical training or other qualifications, his opinion as to the validity of plaintiff's admission was without foundation. Defendant responded with a corresponding motion *in limine* to bar a statement made by Deputy Barrette at the coroner's inquest into the death of Rhonda Cashmore. According to defendant's motion, a juror at the inquest asked about the fact that plaintiff said he was traveling eastbound when the investigation showed he was traveling westbound. The deputy gave the following answer, under oath:

"He said—he told me that he was in the wrong lane for about five seconds and was going too fast and he got into the accident. That was about the extent of what he said. He was very delirious and disoriented."

Defendant characterized the statement that plaintiff was delirious and disoriented as being in the nature of a medical conclusion by a lay witness. The court granted both parties' motions but added that Barrette could testify factually as to his observations. Prior to his trial testimony Barrette was given a *voir dire* examination in which he indicated that he thought plaintiff was delirious and disoriented when he talked to him at the scene of the accident. In response to questions from the court, the deputy advised that he continued to have that impression when he spoke to plaintiff at the hospital.

Based on plaintiff's statement that he had been driving in the wrong lane when the accident happened, defendant's theory of the case was that Ms. Cashmore had maneuvered her car into the westbound lane in order to avert a collision with plaintiff in the eastbound lane. In response, plaintiff attacked the reliability of his statement about driving in the wrong lane. He urged that he was still intoxicated and had just been seriously injured when he made the state-

ment. Focusing on the other inaccurate representations he made at approximately the same time, plaintiff took the position that he had not been capable of giving an accurate description about what happened and his statement, therefore, was not trustworthy and should be disregarded.

The jury returned a verdict in favor of the estate of the decedent and against the plaintiff. Following the entry of judgment, plaintiff filed a post-trial motion contending, among other things, that the court should have allowed into evidence Deputy Barrette's inquest statement that plaintiff was delirious and disoriented when he said he was driving in the wrong lane. In denying the motion the trial court indicated that the testimony amounted to a conclusion of the plaintiff's medical and mental state, without any foundation. The court also noted that if the ruling was error it was harmless because, among other things, the jury had heard testimony as to all the surrounding circumstances as well as the observations of other witnesses concerning plaintiff's mental and medical state following the accident when the admission was made. This appeal followed.

■ Plaintiff contends, as he did in his post-trial motion, that the trial court erred when it barred Deputy Barrette's sworn inquest statement that plaintiff was delirious and disoriented. The admissibility of evidence is a matter for the sound discretion of the trial court whose rulings, once made, will be overturned only when they clearly reflect an abuse of that discretion. (*Skelton v. Chicago Transit Authority* (1991), 214 Ill. App. 3d 554, 577; *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 68.) The record reflects that the trial court excluded Barrette's statement on the ground that it would have constituted medical testimony without a proper foundation. It is not disputed that the deputy did not have a medical background or medical training. Plaintiff maintains, however, that Barrette's statement was admissible as nonexpert opinion testimony.

A lay witness may express an opinion based on his observations when it is difficult or impossible for him to convey to the jury the totality of the conditions perceived and the opinion is one that people in general are capable of and accustomed to making and understanding. (*People v. Ricketts* (1982), 109 Ill. App. 3d 992, 998; *People v. Stokes* (1981), 95 Ill. App. 3d 62, 66.) To be admissible, nonexpert opinion testimony must be of assistance to the trier of fact, *i.e.*, it must be (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue. (*Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 221-22, citing Fed. R. Evid. 701; *Scheibel v. Groeteka* (1989), 183

Ill. App. 3d 120, 131-32, citing Fed. R. Evid. 701.) Here, the record leaves no doubt that Deputy Barrette had ample opportunity to observe both plaintiff's physical condition and his mental status. Further, we believe that people in general share a common understanding of what is meant by "delirious" and "disoriented" and are accustomed to forming such opinions themselves.

We recognize that Dr. Kaufman gave expert testimony relative to what is meant by "disoriented." However, his definition is not in conflict with what we believe to be the average lay person's impression of one who is "disoriented." According to Dr. Kaufman, "alert and oriented" indicates the patient's brain is working properly. "Oriented" relates to the ability to know the time, date, location, and other people. We think most lay persons, coming upon one who does not know other people, or the time and date, or where he or she is, would form the opinion that the other person was disoriented. We do not perceive this as a matter so beyond common experience that only persons of skill or expertise are capable of forming a correct judgment. (See *People v. Canity* (1981), 100 Ill. App. 3d 135, 151.) Rather, we find these characterizations similar in nature to a number of others which have been found to be proper subjects of lay opinion testimony.

Upon the establishment of a proper foundation, nonexperts have been allowed to state opinions on elements of testamentary capacity (*In re Estate of Veronico* (1979), 78 Ill. App. 3d 379, 384); intoxication (*Doria v. Costello* (1974), 22 Ill. App. 3d 505, 510); excitement (*Dimick v. Downs* (1876), 82 Ill. 570, 572); nervousness and upset state (*People v. Hauke* (1929), 335 Ill. 217, 231); fear (*Law v. Central Illinois Public Service Co.* (1980), 86 Ill. App. 3d 701, 706); unconsciousness after an accident (*Chicago City Ry. Co. v. Van Vleck* (1892), 143 Ill. 480, 485); and sanity (*People v. Chatman* (1986), 145 Ill. App. 3d 648, 659).

It is true that deliriousness and disorientation pertain primarily to a person's mental status and mental processes. This was also true of the emotion of fear in *Law v. Central Illinois Public Service Co.* (1980), 86 Ill. App. 3d 701, 706. However, like the *Law* court, we observe that such mental states manifest themselves physically, and it is only the collective effect of the physical signs that lead to the conclusion a person is delirious or disoriented. As the *Law* court pointed out, "the inefficiency of the process of eyewitness testimony, compounded by the inaccuracies of the English language, necessitates the admission of this type of testimony." *Law*, 86 Ill. App. 3d at 706.

Finally, Barrette's statement would have helped the jury to determine whether plaintiff's statement about driving in the wrong lane was reliable, or the product of a disturbed mind, thus providing a basis for

deciding who was at fault in the accident. We held that Barrette's statement that plaintiff was delirious and disoriented was admissible as non-expert opinion testimony.

While we conclude that Deputy Barrette could properly have given an opinion, and thus provided substantive evidence that plaintiff was delirious and disoriented, we note that any such testimony was barred by a motion *in limine*. In light of the testimony actually given by the deputy in defendant's case, it is difficult to see how plaintiff would have gotten the inquest statement into evidence in the form of an opinion by Barrette. In contrast, it is obvious that Barrette's inquest statement would have been impeaching of his trial testimony if plaintiff had been permitted to use it. As we see it, even if the trial court had been correct in excluding Barrette's statement as an improper nonexpert opinion, it was error to prohibit its use for impeachment purposes.

A witness may be impeached by showing that on a prior occasion the witness made statements inconsistent with his or her trial testimony on material matters. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 268-69; *Baumgartner v. Ziessow* (1988), 169 Ill. App. 3d 647, 659.) To be considered inconsistent and thus impeaching, a prior statement need not be directly contradictory to the witness' later testimony; the test is whether the statement has a reasonable tendency to discredit the witness' trial testimony on a material matter. (*In re Lane* (1989), 127 Ill. 2d 90, 104-05; *Kritzen v. Flender Corp.* (1992), 226 Ill. App. 3d 541, 552.) Here, Barrette stated at the inquest that plaintiff was delirious and disoriented when he said he had been driving in the wrong lane and driving too fast. Barrette made this observation under oath. At trial, also under oath, Barrette testified that when plaintiff made the implicating statements he was calmer than he had been at the accident scene, never lost consciousness, seemed to understand the questions asked, did not ask to have questions repeated, and did not hesitate in his responses. We opine that Barrette's inquest characterization of plaintiff as delirious and disoriented would have had, at the very least, a reasonable tendency to discredit the word picture, painted by Barrette at trial, of the collected and aware young man he spoke with at the hospital. Moreover, the inconsistencies certainly concerned a material matter. In the face of the undisputed fact that Ms. Cashmore's auto hit plaintiff's van head on in plaintiff's lane, defendant's entire theory of the case revolved around plaintiff's utterance that he had been driving in the wrong lane. Hence, it mattered a great deal whether plaintiff's statement was worthy of being believed. It follows that plaintiff's condition or mental status when he made the statement was material to the determination of

his credibility. Barrette's prior inconsistent statement should have been admitted for purposes of impeachment.

The trial court specifically stated that, to the extent its ruling on Barrette's inquest statement was error, that error was harmless. Plaintiff correctly points out that, according to the remarks in its order, the court believed Barrette's conclusion that plaintiff was delirious and disoriented pertained only to the scene of the accident and not to the time in the hospital when plaintiff said he was driving in the wrong lane. Thus, the court found basically that the deputy's conclusion was irrelevant. The court's belief on this matter was mistaken. The report of his *voir dire* examination reveals that Barrette admitted, in response to the court's own question, that he still thought plaintiff was delirious and disoriented when he spoke to him at the hospital. Consequently, Barrette's testimony was not irrelevant on the basis of the time the deputy observed plaintiff's mental state *vis-a-vis* the time plaintiff gave his inculpatory response to the deputy's questions.

The trial court also found any error to be harmless because the jury had heard testimony concerning all the circumstances of the accident and its aftermath and the observations of other witnesses as to plaintiff's mental and medical state around the time of the admission. Our review of the record leads to a different conclusion. There is no doubt that plaintiff was in the proper lane when the accident happened. As we pointed out above, defendant's entire case turned on plaintiff's statement that he had been driving in the wrong lane and going too fast. Solely from that evidence defendant argued that Ms. Cashmore had moved into the westbound lane because she was trying to avoid a collision with plaintiff. Hence, the reliability of plaintiff's statement became a critical issue.

Evidence was presented on both sides of the question whether, as a result of his condition, plaintiff's statement was trustworthy. The nurse's remarks, charted less than an hour before plaintiff made the admission; Dr. Kaufman's opinion, as well as the bases for that opinion; and Deputy Barrette's direct testimony all tended to suggest plaintiff was calm, alert, and able to give accurate, reliable answers when Barrette spoke with him at the hospital. On the other hand, it is undisputed that plaintiff was seriously injured at approximately 3:05 a.m. and showed a blood-alcohol content still well above the legal limit at 5:40 a.m., shortly after he made the admission. The gist of his parents' testimony was that, at 7:30 that morning, plaintiff was in a great deal of pain and discomfort, agitated, and unable to understand what was happening. Most telling of all, plaintiff's admission was that he was driving in the wrong lane and going too fast when the accident happened. How-

ever, Deputy Barrette's investigation showed, and it is not contested, that plaintiff was not in the wrong lane upon impact. Also, Barrette was of the opinion that speed was not an issue. Similarly, Deputy Barrette testified on cross-examination that, during the same time period plaintiff said he was driving in the wrong lane, he also said he was traveling eastbound and had been out dancing at the Holiday Inn. Neither statement was true, although plaintiff had also made the statement about traveling eastbound, along with several other incorrect statements, at the scene of the accident.

The evidence as to the pivotal issue of plaintiff's condition and his ability to relate correctly what happened was closely balanced. Deputy Barrette's direct testimony took on substantial significance since he was the only person present when plaintiff made the relevant admission. Under these circumstances we cannot say the improper exclusion of Barrette's inquest statement was not prejudicial to plaintiff. At trial Barrette testified only that plaintiff was calm and responsive. Had Barrette given a conflicting opinion, or had it been revealed that at a time prior to trial Barrette had testified, under oath, that plaintiff was delirious and disoriented when he made the admission, the jury may very well have given less weight to the deputy's trial testimony. In a close case, such a shift could cause a change in the outcome.

To summarize, testimony regarding Barrette's characterization of plaintiff as delirious and disoriented should have been admitted, if not as nonexpert opinion testimony, then certainly for impeachment purposes. The trial court's decision to the contrary constituted an abuse of discretion which cannot be minimized as harmless error. Coupled with the errors discussed below, the improper exclusion of Barrette's statement constitutes grounds for reversal.

■ We turn now to plaintiff's contention that he was denied a fair trial as a result of improper closing argument. During his argument defense counsel explained to the jurors that if a plaintiff was found 50% or more at fault, he would recover nothing. Counsel then added the following:

> "Now, that's the reason, ladies and gentlemen, that I'm asking you to return a verdict in favor of Rhonda Cashmore in this case. I mean let's face it and get right to the heart of it. Drinking and driving is not right. It was wrong for Rhonda Cashmore and it was wrong for Mr. Zoerner and the difference is Mr. Zoerner is in here asking you for hundreds of thousands of dollars because of it. That's wrong. And we should send a message that it's wrong and I hope you'll do that with your verdict."

Counsel concluded his argument by saying:

"And I hope you will feel that even though if he goes away with nothing, that's not the wrong thing to do because he can get on with his life and put this behind him and it will not reward somebody for drinking and driving on the county highways and getting hundreds of thousands of dollars. That's really what this comes down to."

Plaintiff asserts that it was error for defense counsel to urge the jury to reach a certain verdict because it would send a message against drunk driving and not reward plaintiff for antisocial behavior. Defendant responds that the issue is waived or, if not waived, that the statements were not so prejudicial as to deny plaintiff a fair trial.

Plaintiff did not object to anything defense counsel said during closing argument. Nor did he challenge closing argument in his post-trial motion. Generally, the failure to object to alleged errors in an opponent's closing argument is considered a waiver of objection. (*Kenny Construction Co. v. Hinsdale Sanitary District* (1982), 111 Ill. App. 3d 690, 700.) The failure to include an objection in a post-trial motion may also result in waiver. (*Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 958; *Rexroat v. Devine* (1987), 157 Ill. App. 3d 284, 288.) However, the waiver rule is a limitation on the parties to an appeal, not on the reviewing court (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279), and may be ignored in order to achieve a just result (*Riley v. Fair & Co., Realtors* (1986), 150 Ill. App. 3d 597, 600). Accordingly, despite the absence of objection, a reviewing court may consider claims of improper statements during closing argument to the extent such statements prevented a fair trial. (*Ryan v. Katz* (1992), 234 Ill. App. 3d 536, 542; *Kenny Construction*, 111 Ill. App. 3d 690.) We find that the statements set forth above were sufficiently prejudicial to plaintiff to warrant review, even though plaintiff did not object to them.

In *Hansel v. Chicago Transit Authority* (1971), 132 Ill. App. 2d 402, the court held that remarks essentially very similar to some of those made in this case prevented plaintiff from receiving a fair trial. Counsel in *Hansel* stated:

" 'Counsel asked you to give him $62,000 and in the same breath he is asking you to put a premium on a man who gets drunk and intoxicated and he asked you now to reward him.' " (*Hansel*, 132 Ill. App. 2d at 406.)

Regarding this remark the court first pointed out that the issue in the case was whether the evidence established that plaintiff was intoxicated at the time of the accident and, if so, whether such intoxication proximately caused his injuries. The court then reasoned as follows:

"[The jury's] determination of these factual issues should not in any way have been related to whether a verdict for plaintiff would place a 'premium' on drunkenness or constitute a 'reward' for getting drunk. The province of the jury is the resolution of factual issues in the narrow context of the case before them, not the rendering of moral or social judgments in verdict form. The purpose of argument by counsel is to assist the jury fairly, deliberately and impartially to arrive at the truth of the facts submitted to them for their decisions. [Citation.] It is error for counsel to indulge in assertions which appeal to the passions of the jury and have no bearing or relation to the case whatsoever."

The court concluded that counsel's comments were sufficiently prejudicial to have prevented a fair trial.

We find *Hansel* highly persuasive that plaintiff here did not have a fair trial, either. After emphasizing that drinking and driving is wrong, defense counsel told the jury that plaintiff "is in here asking you for hundreds of thousands of dollars because of it." Counsel exhorted the jurors to "send a message that it is wrong" and even added, "I hope you'll do that with your verdict." In a manner strikingly similar to counsel in *Hansel*, defense counsel concluded his argument by saying that denying plaintiff recovery "will not reward somebody for drinking and driving on the county highways" and get them "hundreds of thousands of dollars."

Besides damages, the jury in this case was charged only with determining the proximate cause of the accident. Suggestions of being rewarded for driving drunk or sending messages that drunk driving is wrong had no place in the jury's deliberations about a factual issue, and counsel was ill advised to insinuate that they did. Counsel clearly appealed to the jurors' sense of moral outrage with an argument that had no bearing on the case—a tactic hardly directed at helping the jury impartially to resolve the fact questions presented to it. Like the *Hansel* court we conclude that, in his closing argument, defense counsel "exceeded the bounds of proper debate and prevented plaintiff from receiving a fair trial." *Hansel*, 132 Ill. App. 2d at 407.

■ With regard to closing argument plaintiff also contends that defense counsel misstated the law by advising the jury that plaintiff's intoxication alone was a reason for returning a verdict against him. Plaintiff cites remarks in which counsel drew the jury's attention to the difference in the blood-alcohol content of plaintiff and Ms. Cashmore. In essence counsel told the jurors that plaintiff was trying to persuade them that, despite his higher level of intoxication, it was not he who caused the accident. Counsel added the following:

"And just by that disparity alone, if you knew nothing else, if you went home to tell somebody after this case is over with that was the facts, I mean everyone would say, well, then it's—who is more likely to have adjusted to who? Who was trying to avoid who given that fact? That alone is basis for him to lose this lawsuit."

We find no merit in plaintiff's claim that the jury was advised that his intoxication alone was a sufficient basis for finding against him. Plaintiff and Ms. Cashmore were the only persons involved in the accident itself. Ms. Cashmore was dead, and plaintiff did not remember what happened. Nor did plaintiff remember telling Deputy Barrette that he had been driving in the wrong lane. There were no other witnesses to tell what had happened. Consequently, using only circumstantial evidence, each of the parties theorized that the other had crossed the center line, thereby causing the accident. As we understand his remarks, all counsel was trying to say to the jury was that, in light of plaintiff's significantly greater intoxication, defendant's story was the more believable. We do not think counsel attempted to persuade the jury that, merely because he was intoxicated, plaintiff was liable. Counsel must be granted considerable latitude in closing argument. (*Tracy v. Village of Lombard* (1983), 116 Ill. App. 3d 563, 577.) We find no error in this particular argument.

Although the closing remarks we just discussed were not prejudicial to plaintiff, counsel's other argument, urging the jury to make a social or moral statement, certainly was. Plaintiff was also severely prejudiced when he was precluded from telling the jury that, at a time other than trial, Deputy Barrette had described plaintiff as delirious and disoriented when he made his critical admission. Collectively, these errors were sufficient to deny plaintiff a fair trial.

For the reasons set forth, we reverse the judgment of the circuit court of Lake County and remand this matter for a new trial.

Reversed and remanded.

QUETSCH and COLWELL, JJ., concur.